**In re Terry A. CANALES, Judge, 79th Judicial District Court of Texas.**

No. 84.

Review Tribunal, Appointed by Supreme Court of Texas.

Sept. 4, 2003.

Seana Willing and Jacqueline R. Habersham, State Commission on Judicial Conduct, Austin, David Horton, Neel & Horton, L.L.P., Kirk Mills, Law Offices of Kirk Mills, P.C., South Padre Island, for Petitioner, State Commission on Judicial Conduct.

Augustin Rivera, Jr., Dunn, Weathered, Coffey, Rivera & Kasperitis, P.C., Darrell L. Barger, Hartline, Dacus, Barger, Dreyer & Kern, L.L.P., Corpus Christi, Jack Paul Leon, Law Offices of Jack Paul Leon, San Antonio, Gabriela S. Canales, Law Offices of Gabriela S. Canales, Alice, for Respondent, Terry A. Canales.

### OPINION

Chief Justice RICHARD BARAJAS, delivered the opinion of the Review Tribunal in which Justices DAY, O'NEILL, ROSS, NUCHIA, GUZMAN, and MARION, join.[1]

This is an appeal from the recommendation of the Texas State Commission on Judicial Conduct that Respondent, Terry A. Canales, be removed as Judge of the 79th Judicial District Court of the State of Texas, and further, that he be forever barred from holding judicial office in this State.[2] The Commission found that Respondent, while in his judicial capacity, and at times in his chambers, engaged in inappropriate, unsolicited, sexually suggestive conduct which included sexual assault and battery, i.e., forcefully kissing and fondling three young women. The women included his twenty-seven-year-old court secretary, an eighteen-year-old part-time employee with the Brooks County District Attorney's Office, and the twenty-one-year-old pregnant daughter of his court bailiff. Respondent has rejected the findings, conclusions, and recommendations of the Commission and in response, challenges the findings and ultimate recommendation that he be removed from office.

### I. SUMMARY OF THE EVIDENCE

The State Commission on Judicial Conduct, in adopting its findings of fact, found that Judge Terry A. Canales relentlessly engaged in willful and persistent conduct clearly inconsistent with the proper performance of his duties, and further, that his willful and persistent conduct cast public discredit upon the judiciary or the administration of justice. The Commission found his action to be in violation of TEX. CONST. art. V, § 1–a(6)A of the Texas Constitution. As noted above, the Commission found that Respondent, while in

---

1. The Review Tribunal was composed of Hon. Sam Day, Justice, Second District Court of Appeals, Fort Worth, designated Presiding Justice; Hon. Richard Barajas, Chief Justice, Eighth District Court of Appeals, El Paso; Hon. Michael O'Neill, Justice, Fifth Court of Appeals, Dallas; Hon. Donald Ross, Justice, Sixth Court of Appeals, Texarkana; Hon. Sam Nuchia, Justice, First Court of Appeals, Houston; Hon. Eva Guzman, Justice, Fourteenth Court of Appeals, Houston; Hon. Sandee Marion, Justice, Fourth Court of Appeals, San Antonio.

2. On November 6, 2002, the Supreme Court appointed a Review Tribunal to review the recommendation of the State Commission on Judicial Conduct that Respondent be removed from office and prohibited from holding judicial office in the future. The action was brought in accordance with TEX. CONST. art. V, § 1–a (1993) and the TEX.R. REM'L/RET. JUDGES, 56 Tex.B.J. 823 (1993), promulgated by the Texas Supreme Court on May 22, 1992.

his judicial capacity, and at times in his chambers, engaged in inappropriate, unsolicited, sexually suggestive conduct with three young women.[3]

The voluminous record in the instant case shows, and the Commission found, that on or about August 1996, Judge Terry A. Canales engaged in the inappropriate physical touching and kissing of "L.B.," his twenty-seven-year-old court secretary at the time. The unsolicited and unwelcome touching took place in Respondent's chambers located in Alice, Jim Wells County, Texas, during regular court hours. The record shows that "L.B." entered Respondent's chambers to conduct routine business and pick up signed notices. "L.B." testified that upon her entering the chambers, "he got up and walked around his desk and just grabbed me and started kissing me." "L.B." further testified that she did not consent to the grabbing and kissing, but rather pushed him away and immediately left the chambers.

The Texas State Commission on Judicial Conduct found that Respondent's actions in engaging in the inappropriate physical touching of "L.B.," while in his judicial chambers constituted willful or persistent conduct in violation of Article V, § 1–a(6) of the Texas Constitution,[4] and Canon 2A of the Texas Code of Judicial Conduct,[5] and thus, was willful conduct that was clearly inconsistent with the proper performance of his judicial duties and further served to cast public discredit upon the judiciary or the administration of justice.

The record further shows that on or about February 5, 2000, Respondent made an unsolicited telephone call to "R.H.," an eighteen-year-old part-time employee with the Brooks County District Attorney's office, during which time he made sexually suggestive comments. The record shows that "R.H." came to know Respondent during her employment. During the course of time, Respondent offered to find her full-time employment with his daughter's law firm. "R.H." testified that she never gave Respondent either her cellular phone number nor her home phone number, but that nonetheless, he acquired her telephone numbers and began calling her. She testified that Respondent would make late night calls to both her cell and home phones which had no substantive content, something she found discomforting. On the occasion at hand, Respondent made a morning call to "R.H." while she was getting ready to go to school. She testified that she told him she was going to take a shower and he responded in a sexually suggestive manner. "R.H." testified that:

> [he wanted me] to think about him in the shower while I'm in the shower rubbing

---

3. This Tribunal is not unmindful of the embarrassing nature of these allegations and the resulting effect that these allegations may have on the victims involved. The embarrassment is amplified by the fact that the conduct is said to have occurred in a small, rural community. For that reason we address the young women as "L.B.," age 27, "R.H.," age 18, and "F.D.," age 21.

4. Article V, § 1–a(6)A of the Texas Constitution provides, in pertinent part, that any Justice or Judge of the courts established by the Constitution or created by the Legislature may be removed from office, disciplined, or censured for "incompetence in performing the duties of the office, willful violation of the Code of Judicial Conduct, or willful or persistent conduct that is clearly inconsistent with the proper performance of his duties or casts public discredit upon the judiciary or administration of justice". Tex. Const. art. V, § 1–a(6)A (2003).

5. Canon 2A of the Texas Code of Judicial Conduct provides, "A judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity of the judiciary". Tex. Code Jud. Conduct, canon 2A (2003).

myself. To think about him touching me.

According to "R.H.," this was his last call and no contact was made until the following month in March within his chambers.

The record shows that on or about March 20, 2000, during regular court hours, Respondent engaged in inappropriate non-consensual physical touching of "R.H." while the two were meeting in his chambers in Falfurrias, Brooks County, Texas. "R.H." testified that she was visiting the judge's secretary, Sandra Barrera, and Barrera asked "R.H." to "grab the Judge a soda." Barrera's phone then rang, so "R.H." handed the soda to Respondent in his chambers. As "R.H." was walking toward Respondent to deliver the soda, Respondent walked towards the door and shut it, making it difficult for her to leave. "R.H." further testified that Respondent told her about a county commissioner who was considering making her job with the District Attorney's Office full-time, rather than part-time, with benefits. According to "R.H.," she stated that she "better go" and the conversation shifted to Respondent asking for a hug. Believing Respondent was joking, she said, "No." "R.H." testified that Respondent stated, "No, come on, give me a hug." "R.H." kept saying "no" and he kept asking. "R.H." stated that she finally "just put my arms out to let him hug me." According to "R.H.," she agreed to give him a hug hoping she would then be able to leave. "R.H." testified that while she did agree to hug Respondent, she did not consent to being fondled and related Respondent's actions as follows:

[h]e hugged me underneath my arms. And he touched my butt, put his hands on my butt and tried lifting my dress. I was wiggling and holding my hands up at his chest and—[sic] just keep him away.

"R.H." testified that soon after, Respondent asked her to sit down on his couch to continue their discussion. She sat down at which time Respondent put his hand inside her sleeveless dress and pulled out her bra strap. "R.H." testified that:

And he said, 'Oh, I like black.' And then he put his hand on my knee and tried lifting my dress and said, 'Now let's see if these are matching.'

Finally, "R.H." testified that she stood up and pulled her dress down and walked towards the door, but that Respondent put one hand on the door, the other hand around her waist, pushed himself against her, moaned as he kissed her ear and cheek, and would not otherwise release her. "R.H." believed that she was able to leave the judge's chambers when Respondent heard people approaching.

The Texas State Commission on Judicial Conduct found that Respondent's actions on February 5, 2000, in making sexually suggestive comments to "R.H." during an unsolicited telephone conversation, and his actions of March 28, 2000, in engaging in the inappropriate physical touching of "R.H.," while in his judicial chambers constituted willful or persistent conduct in violation of Article V, § 1–a(6) of the Texas Constitution, and Canon 2A of the Texas Code of Judicial Conduct, and thus, was willful conduct that was clearly inconsistent with the proper performance of his judicial duties and further served to cast public discredit upon the judiciary or the administration of justice.

Finally, the record shows that on or about April 20, 2000, Respondent, during regular court hours and at a meeting in his chambers, engaged in making sexually suggestive comments to "F.D.," the twenty-one-year-old pregnant daughter of his

court bailiff,[6] and further at that same time and place, engaged in the inappropriate nonconsensual physical touching of "F.D."

"F.D." testified that she was introduced to Respondent by her father Juan Delgado, his court bailiff, when she was nine years old, and that she had maintained an amicable relationship with Respondent and his family. Respondent had extended his relationship with "F.D." by securing her employment in both his office and at the juvenile probation office. In addition, on one occasion, he paid one semester of her college tuition. "F.D." stated that in April 2000 she was unemployed and went to visit Respondent at the courthouse in reference to finding a job. She further told Respondent about her pregnancy and her boyfriend. According to "F.D.," Respondent agreed to help, and asked her to return in a week. She stated that she returned a week later, as directed, and met with Respondent in his chambers where he received her with a cordial greeting, asked her to sit down, and sat next to her on his couch. "F.D." testified that she and Respondent conversed about her pregnancy, all the while he had his eyes fixated on her breasts which made her feel uncomfortable. She further testified that she struggled with arranging her dress, while Respondent shifted the conversation by commenting on her physical appearance. In describing the moment, "F.D." stated:

> And he asked me, 'Are you insecure?' And I said, 'No I'm not.' And he said, 'Well you shouldn't be. You've grown up into a very beautiful young lady,' as he was looking at my breast.

She stated that she then lied to him about having to leave.

"F.D." testified that as she was leaving, Respondent asked her for a hug and put his arms around her. She stated that he put his lips on her neck, was breathing hard, and hugged her for over a minute. He asked for another hug and tried to kiss her. "F.D." said she turned her face away, but that he put his hands on her behind, pressed his body against her, and started moaning while she was able to feel his erection. She testified that:

> He started moaning and just making noises or whatever, and he said, 'This feels good, doesn't it?' And I just told him, 'You know what? Just let me go. I really need to go.'

"F.D." testified that Respondent let her go, and as she stepped back he caught sight of a bruise on her chest, pointed it out, touched it, and then put his hand on her dress, touching her breasts. She took a step back, opened the door, and walked out. Finally, she stated that as she was leaving, Respondent asked her to return later to check on her job prospects.

The Texas State Commission on Judicial Conduct found that Respondent's actions on April 20, 2000, in engaging in the inappropriate physical touching of "F.D.," while in his judicial chambers, constituted willful or persistent conduct in violation of Article V, § 1–a(6)A of the Texas Constitution, and Canon 2A of the Texas Code of Judicial Conduct, and thus, was willful conduct that was clearly inconsistent with the proper performance of his judicial duties and further served to cast public discredit upon the judiciary or the administration of justice.

## II. *DISCUSSION*

Respondent advances eleven reasons why this Review Tribunal should reverse

**6.** The record shows that the court bailiff was an eleven year employee in Respondent's chambers.

the findings of the State Commission on Judicial Conduct, and reject the Commission's recommendation that he be removed and forever barred from holding judicial office. In Issues No. One through No. Four, and Issue No. Eight, he collectively complains of various procedural issues to include statute of limitations, improper joinder, defect in pleadings, application of the improper legal standard, and the denial of discovery. In Issues No. Five through No. Seven, he contends that the evidence is both legally and factually insufficient to support the Commission's findings. In Issues No. Nine and No. Ten, Respondent asserts that the sanction of removal and permanent bar from holding judicial office in the future is excessive. Finally, in Issue No. Eleven, Respondent asserts that his rights under both the United States Constitution and the Texas Constitution were violated in various respects.

### A. Procedural Standards

■ Judicial conduct proceedings brought in accordance with the constitution of the State of Texas and established rules for the removal or retirement of judges are neither criminal nor regulatory, but rather are civil in nature. Their defined purpose is not necessarily to punish, but to maintain, if not enhance, the honor and dignity of the judiciary of the entire State of Texas and to uphold the administration of justice for the benefit of all its citizens. *In re Barr*, 13 S.W.3d 525, 533 (Tex.Rev.Trib.1998); *see also In re Thoma*, 873 S.W.2d 477, 484–85 (Tex.Rev. Trib.1994) and *In re Lowery*, 999 S.W.2d 639, 648 (Tex.Rev.Trib.1998).

Judicial removal proceedings instituted under TEX. CONST. art. V, § 1–a contin-

ue to be a statistical rarity. Insofar as the procedural nature of the fact finding in the instant case departs significantly from that seen in prior judicial removal proceedings, a discussion of the procedural aspects is essential to a full and complete understanding of the action below.

■ The rules provide that once the Commission has moved for formal proceedings, as in this case, the Respondent judge is to be served with Notice of Formal Proceedings and a verified answer is to be filed by the judge, with the Commission, within 15 days from the date of such service. TEX.R. REM'L/RET. JUDGES, 56 Tex. B.J. 823 (1993), Rule 10(a)(b). In the instant case, Respondent was served with Notice of Formal Proceedings on November 28, 2001, and he timely answered.[7] Under the rules, the Commission is to set a time and place for its formal hearing, before *it* or before a special master, giving notice to the judge at least 20 days prior to the scheduled date of the formal hearing. *Id.*, Rule 10(c)(1)(emphasis supplied). If the Commission directs that the hearing shall be before a special master, it shall make a written request to the Supreme Court to appoint such a special master who is to be appointed within 10 days from such a request. *Id.* Rule 10(c)(2). In the instant case, the Commission elected to hold the formal hearing itself. We note that the rules allow, but do not specifically contemplate formal hearings before the Commission, since the language of the rules relating to formal hearings make exclusive reference to a special master. Nonetheless, in treating the Commission as the fact finder, the rules contemplate the Commission will furnish itself [sic] and

---

7. The record shows that the Commission amended its original Notice of Formal Proceedings on the May 28, 2002 and issued a second amended Notice of Formal Proceedings on June 27, 2002.

the Respondent judge its findings and recommendation.[8] *Id.* Rule 10(h)(1).

Objections, if any, to the report of the Commission are due within 15 days with additional hearings, if any, to be held on 10 days' notice. TEX.R. REM'L/RET. JUDGES, Rule 10(i) and (j). Subsequent to the conclusion of all hearings, the Commission renders its decision to dismiss the complaint, publicly censure the judge, or recommends the removal or the retirement of the judge. *Id.*, Rule 10(m). Upon making a determination to recommend the removal or retirement of a judge, the Commission is to request the Chief Justice of The Texas Supreme Court to appoint a review tribunal, composed of seven justices, selected by lot from the courts of appeals of our state. *Id.*, Rules 1(h); 11; 12(a). A judge may appeal a decision of the review tribunal to the Texas Supreme Court under the substantial evidence rule. *Id.*, Rule 13.

Judge Terry A. Canales was served with Notice of Formal Proceedings on November 28, 2001. The Commission amended its original Notice of Formal Proceedings on the May 28, 2002 and issued a second amended Notice of Formal Proceedings on June 27, 2002. A formal hearing on the merits was held on the August 5, 2002. The Commission, after considering the evidence and the arguments of special counsel, found that "it"

proved by a preponderance of the evidence, the existence of judicial misconduct through inappropriate physical touching and making sexually suggestive comments, as set forth in the Second Amended Notice of Formal Proceedings. After notification of the Commission's Findings of Fact on August 27, 2002, Respondent was granted additional time to file a Statement of Objections to those findings. The Statement of Objections was received by the Clerk of the Commission on September 26, 2002. On September 26, 2002, Respondent received Notice on Hearing Objections, set for October 11, 2002. On October 11, 2002, the State Commission on Judicial Conduct heard oral argument on Respondent's Statement of Objections to the Commission Findings of Fact and further considered the record of the Formal Proceedings involving Respondent. On August 27, 2002, the full Commission accepted the Findings of Fact filed by a six-member panel of the Commission itself, and further voted, by a required affirmative vote of more than six of its members, to request that the Supreme Court of Texas appoint a Review Tribunal. Among its findings, the Commission recommended that Respondent be removed from office and that the Review Tribunal issue an order prohibiting Respondent from holding judicial office in the future. The record in this case shows that the full Commission overruled Respondent's Objections

---

**8.** It is at this juncture that the Commission departed from established procedure in removal proceedings. The rules for removal or retirement of judges contemplates that the Commission may conduct its formal hearing, before itself or before a special master. In the instant case the Commission elected not to have a special master, who would have functioned as a trial judge and fact finder. Instead, the Commission, by order dated March 8, 2002, elected to have the formal hearing before itself. This presents the obvious problem of what to call the fact finder in the instant case, as opposed to "The Commis-

sion." The Commission consists of eleven members. In this case, a quorum of the Commission, consisting of a presiding officer and five members, sat as the "Commission" and heard testimony and made findings and recommendations back to the Commission. *See* TEX.R. REM'L/RET. JUDGES, Rule, Rules 10(c)(1) and (c)(2). We find the procedure followed in this regard awkward at best, and may certainly mislead members of the Texas judiciary that disciplinary proceedings may be less than fair and impartial. We strongly recommend the use of an appointed special master as a fact finder, rather than the Commission itself.

to the Findings of Fact filed with the Commission on September 26, 2002. The appeal of this extraordinary process follows.

■ The burden was upon the Examiner for the State Commission on Judicial Conduct to establish, before a six-member sub-panel of itself, acting as a fact finder, those allegations against Respondent by the preponderance of the evidence, as applied in civil cases. *Barr,* 13 S.W.3d at 533; *Thoma,* 873 S.W.2d at 485; *Lowery,* 999 S.W.2d at 648; *see also In re Brown,* 512 S.W.2d 317, 319–20 (Tex.1974). To the extent that they do not conflict with the RULES FOR REMOVAL OR RETIREMENT OF JUDGES, the civil rules of procedure, both trial and appellate, are applicable. TEX.R. REM'L/RET. JUDGES, 56 Tex. B.J. 823 (1993), Rules 10(d), 12(e) and (g). Moreover, during the course of any hearing conducted in the furtherance of formal proceedings only legal evidence is to be received.[9] *Barr,* 13 S.W.3d at 533; *Thoma,* 873 S.W.2d at 485; TEX.R. REM'L/RET. JUDGES, Rule 10(e). The findings of the sub-panel of the Commission, acting as a fact finder, as adopted by the full Commission, are tantamount to findings of fact filed by a trial judge in a trial without a jury, and as a result, we review such findings in that light. *In re Barr,* 13 S.W.3d at 533; *In re Thoma,* 873 S.W.2d at 485; *In re Lowery,* 999 S.W.2d at 648.

**B. Issues Presented for Review**

**1. Procedural Complaints**

■ In Issue No. Three, Respondent argues that the Commission's findings with regard to "L.B.'s" complaint are unsupported by any live pleadings and are therefore void as a matter of law. The Commission amended its Notice of Formal Proceedings to include "L.B.'s" allegations on May 28, 2002. In its initial Findings of Fact issued on August 27, 2002, the Commission found that the Examiner had proven by a preponderance of the evidence that "[i]n or around August 1995, during regular business hours, Respondent engaged in the inappropriate physical touching and kissing of ["L.B."], his secretary, while in his chambers located in Alice, Jim Wells County, Texas." Respondent filed his Statement of Objections on September 25, 2002, in which he pointed out that there was no evidence in the record that alleged any misconduct "in or around August 1995." Thereafter, the Commission amended its Findings of Fact with regard to "L.B.'s" complaint to read, "In or around August 1996. . . ." Respondent now complains that the amended finding is unsupported by the live pleading on which the Examiner proceeded to trial.

■ The function of a pleading is to define the issues at trial. *See Safety Cas. Co. v. Wright,* 138 Tex. 492, 160 S.W.2d 238, 245 (1942) (op. on reh'g); *Bader v. Cox,* 701 S.W.2d 677, 686 (Tex.App.-Dallas 1985, writ ref'd n.r.e.). A petition must give fair and adequate notice of the facts upon which the pleader bases his claim so that the opposing party has information sufficient to enable him to prepare a defense. *See Roark v. Allen,* 633 S.W.2d 804, 810 (Tex.1982); *see also* TEX.R. CIV. P. 45, 47. The pleadings and the evidence must coincide. *Wright,* 160 S.W.2d at 245. However, a variance between the pleadings and proof is fatal only if the divergence is substantial, misleading, and prejudicial. *See Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 186–87 (Tex.1977); *see also* 2 McDONALD TEXAS CIVIL PRACTICE § 7.32[b] (rev. 1992).

**9.** In addition to the requirement that only legal evidence be received, timely objections, as well as other requirements for the proper preservation of error for review, are required.

■ The term "on or about" means a date of approximate certainty, with a possible variance of a few days. *See Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex.1990) (citing BLACK'S LAW DICTIONARY 564 (5th ed. 1979); *State v. Metzger*, 199 Neb. 186, 256 N.W.2d 691, 692 (1977)). Here, the variance was twelve months, which is a substantial difference. Upon Respondent's objection, the Commission should have not only amended its Findings, but should have also amended the formal notice, or moved for a trial amendment to the pleadings, to conform with the evidence presented as allowed by Rule 10(f). TEX.R. REM'L/RET. JUDGES, Rule 10(f).

Accordingly, Issue No. Three is sustained. Given our disposition of Issue No. Three, we need not address Issues No. One, Two [10] and Five.

In Issue No. Four, Respondent maintains that the Commission used an improper legal standard in arriving at its Findings, Conclusions and Recommendations. Respondent argues that the proper legal standard to be used in removal proceedings is the higher "clear and convincing" standard of proof following the Texas Supreme Court's decision in *In re Laughlin*, 153 Tex. 183, 265 S.W.2d 805, 809 (1954). Respondent further points out that the holding in *Laughlin* has never been expressly overturned, but rather, that it has simply been overlooked by the subsequent removal proceedings. Respondent contends that perhaps a preponderance standard is appropriate in judicial disciplinary proceedings where the sanction imposed is less than removal. Respondent notes that the *In re Brown*, 512 S.W.2d 317 (Tex. 1974) was the first removal proceeding

instituted under the amended Section 1–a of Article V of the Texas Constitution.

We are unconvinced by Respondent's argument. *In re Laughlin* has not simply been overlooked by the subsequent removal proceedings. Respondent himself pointed out that there was an amendment to the pertinent section of the Texas Constitution and that *In re Brown* was the first removal proceeding instituted under such amendments. It is therefore not a simple oversight on the part of the Supreme Court, or Review Tribunals, to have applied *In re Brown* as precedence to support the legal standard to be used in these proceedings. In this case the Court determined that "the burden to establish the charges against Judge Brown was upon the Examiner, and those charges had to be established by a preponderance of the evidence." *In re Brown*, 512 S.W.2d at 319–20. Similarly, *In re Thoma*, the first proceeding to be reviewed by a Review Tribunal, established that the legal standard to be used in these proceedings is a "preponderance of the evidence." 873 S.W.2d 477, 485 (Tex.Rev.Trib.1994) (citing *In re Brown*, 512 S.W.2d at 319–20). Subsequently, *In re Barr* and *In re Lowery*, both agreed with the *Brown* and *Thoma* decisions making the legal standard for review a "preponderance of the evidence." *See In re Barr*, 13 S.W.3d at 525; *In re Lowery*, 999 S.W.2d 639 (Tex.Rev. Trib.1998).

■ It is well settled law in the State that the legal standard for removal proceedings is a "preponderance of the evidence" standard rather than a "clear and convincing evidence" standard as Respondent argues. We agree with Respondent that removing a member of the judiciary

---

**10.** In Issue No. Two, Respondent asserts that the "L.B." and "T.C.M." complaints were improperly, untimely, and unfairly joined two months prior to trial. We note that the Commission did not sustain the allegations with regard to T.C.M. so we find no harm in the joining of T.C.M.'s complaints and need not address Issue No. Two.

and depriving the electorate of its choice of judge is a serious matter and it is for this reason that uniformity in the standard used should be preserved so as to not send mixed signals to subsequent proceedings. For the reasons set forth above, we find that the proper legal standard was used by the Examiner. Accordingly, Issue No. Four is overruled.

▮ In Issue No. Eight, Respondent asserts that he was unfairly denied discovery of potentially exculpatory telephone records, medical records, and information regarding pertinent conversations between complainants and witnesses. Respondent cites no authority as to how the court abused its discretion in overruling the motion to compel discovery of the telephone records. *See* Tex.R.App. P. 38.1(h); *Leyva v. Leyva,* 960 S.W.2d 732, 734 (Tex.App.-El Paso 1997, no writ) (failure to cite authority in support of point of error waives complaint). We note that while "R.H." was ordered to produce various records at trial, she claimed that she could not locate any of the requested records. Nonetheless, Respondent acknowledges that at no time did he seek to subpoena the records in question.

▮ Furthermore, Respondent cites no authority to support his contention that "R.H.'s" medical records were "clearly relevant and discoverable." Respondent wholly failed to make an offer of proof. Preservation of a complaint is a prerequisite for appellate review. Tex.R.App. P. 33.1(a). Error may be predicated on a ruling that excludes a party's evidence only if the substance of the evidence was made known to the court by offer. Tex.R. Evid. 103; *Ludlow v. DeBerry,* 959 S.W.2d 265, 269–70 (Tex.App.-Houston [14th Dist.] 1997, no writ). The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. Goode, Well-

born & Sharlot, Guide to the Texas Rules of Evidence, § 103.3 at 21 (2nd ed. 1993). A secondary purpose is to permit the trial judge, or in this case the Commission, to reconsider his ruling in light of the actual evidence. *Id.* An offer of proof is sufficient if it apprises the court of the substance of the testimony and may be presented in the form of a concise statement. *Chance v. Chance,* 911 S.W.2d 40, 51–52 (Tex.App.-Beaumont 1995, writ denied). Excluded evidence also may be preserved for appellate review by a post-trial bill of exception. Tex.R.App. P. 33.2. Respondent never stated the relevance of the records he sought, failed to make an offer of proof, and failed to cite any authority to support his argument. Respondent has waived his complaint with regard to "R.H.'s" medical records. Accordingly, Respondent's Issue No. Eight is overruled in its entirety.

### 2. Sufficiency of the Evidence to Establish "Willful" Violations

The record in the instant case includes an extensive reporter's record. Consequently, the Commission's adopted findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards applied in reviewing the legal and factual sufficiency of the evidence supporting findings in a civil case, either by a trial court or by a jury. *In re Barr,* 13 S.W.3d at 533; *In re Lowery,* 999 S.W.2d at 648; *In re Thoma,* 873 S.W.2d at 485.

▮ A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re Barr,* 13 S.W.3d at 533; *In re Thoma,* 873 S.W.2d at 485 (citing generally *In re King's Estate,* 150

Tex. 662, 244 S.W.2d 660 (Tex.1951)). As in appeals of civil matters, this Review Tribunal cannot substitute its findings for those of the Commission. If there is sufficient competent evidence of probative force to support the findings and recommendation, they must be sustained. *In re Barr*, 13 S.W.3d at 533–34; *In re Thoma*, 873 S.W.2d at 485 (citing *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136 (Tex.App.-El Paso 1992, writ denied)). It is not within the province of this Review Tribunal to interfere with the Commission's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *In re Barr*, 13 S.W.3d at 534; *In re Thoma*, 873 S.W.2d at 485 (citing *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (Tex.1951)). Where there is conflicting evidence, the findings of the Commission on such matters will be regarded as conclusive. *In re Barr*, 13 S.W.3d at 534; *In re Thoma*, 873 S.W.2d at 485 (citing *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947); *Oechsner*, 840 S.W.2d at 136)).

■ In considering a "no evidence" legal insufficiency point, we consider only the evidence that tends to support the Commission's findings and disregard all evidence and inferences to the contrary. *In re Barr*, 13 S.W.3d at 534; *In re Thoma*, 873 S.W.2d at 485 (citing *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965)). If there is more than a scintilla of evidence to support the questioned finding, the legal sufficiency point fails. *In re Barr*, 13 S.W.3d at 534; *In re Thoma*, 873 S.W.2d at 485–86 (citing *Worsham Steel Co. v. Arias*, 831 S.W.2d 81 (Tex.App.-El Paso 1992, no writ)).[11]

■ In Issue No. Six, Respondent challenges the legal and factual sufficiency of the evidence to support the Commission's findings with regard to the "F.D." complaint. Respondent contends that one of the "F.D." findings and the Examiner's live evidence are at variance with the evidence at trial. According to Respondent, "F.D." testified that the alleged incident occurred on April 26, 2000, while the findings of the Commission state that the alleged incident took place on April 20, 2000. He contends that there is absolutely no evidence that any misconduct took place on April 20, 2000 and that the finding of the Commission is not supported by any evidence. The finding of the Commission states as follows:

> 5. On or about April 20, 2000, during the regular business hours, Judge Canales engaged in the inappropriate non-consensual physical touching of ["F.D."] while the two were meeting in his chambers located at the courthouse in Alice, Jim Wells County, Texas.

> 6. On or about April 20, 2000, during the meeting in his chambers, Judge Canales made sexually suggestive comments to ["F.D."].

The findings of the Commission were not specifically stated to date April 20, 2000 as Respondent contends. The language "on or about" suggests that the findings occurred in some date near to April 20, 2000. "F.D.'s" testimony suggests that the alleged incident took place on or about April 20, 2000, namely April 26, 2000. We find there to be more than a scintilla of evi-

---

11. Respondent, citing no authority, persuasive or otherwise, suggests that this Review Tribunal should abandon the recognized standards of review of legal and factual sufficiency of the evidence and instead adopt a "just and proper" standard in determining the merits of the Respondent's removal from office. We decline Respondent's invitation to adopt such a vague and cloudy standard, instead electing to hold Texas jurists to a higher, more clearly defined, uniform standard.

dence to support the Findings of the Commission.

■ Respondent also contends that the evidence suggests "F.D.'s" complaint was motivated by revenge rather than the truth. Specifically, Respondent argues that "F.D." sought revenge for her father being terminated from his job as a custodian at a building owned by Respondent. Respondent suggests that the testimony of "F.D.'s" former boyfriend and his mother, that "F.D." made up the complaint to "get back" at Respondent after her father was terminated from his job, supports this contention. Respondent contends that in an audio-taped telephone message from "F.D." to her former boyfriend, she threatened the former boyfriend for testifying and that more than once she alluded that she was not going to "get any money." Respondent further contends that the one aspect of "F.D.'s" complaint which she could have corroborated with documentary evidence, was disproved by the same evidence: the allegations of her condition at the hospital.

We are unconvinced by Respondent's arguments. The testimony of "F.D.'s" former boyfriend and his mother was also contested. Respondent presented the audiotape as Exhibit 111. On the tape, "F.D." told her former boyfriend that she did not know why he was lying and that she did not know what it was that Respondent would give him in return. Also in the message, "F.D." stated that at worst she would not get any money, but that Respondent would still get "what he deserves because of the other allegations." There is nothing in this audiotape that suggests that money was the sole purpose of her complaint. Similarly, the only evidence that suggests "F.D.'s" complaint was motivated by revenge is the testimony of her former boyfriend and his mother. Respondent suggests that this evidence dis-

proves "F.D.'s" condition prior and at the time she was at the hospital. We disagree. In the medical report introduced as Exhibit 49, there is a suggestion that there was vaginal bleeding that evening and that the blood was taken to do an analysis. Also, "F.D.'s" emotional state at the time of the hospital visit does not suggest her emotional state prior to her going to the emergency room. In reviewing only the evidence that tends to support the finding of the Commission and disregarding all evidence to the contrary, we find more than a scintilla of evidence to support the findings of the Commission with regards to "F.D.'s" complaint. Similarly, having reviewed the record in its entirety to determine whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust, we find that there is factually sufficient evidence to support the findings of the Commission with regard to "F.D.'s" complaint. For the reasons set forth above, we overrule Issue No. Six in its entirety.

In Issue No. Seven, Respondent challenges the legal and factual sufficiency of the evidence to support the Commission's findings with regard to the "R.H." complaint. The record shows that "R.H." came to know Respondent during her employment with the Brooks County District Attorney's office. During the course of time, Respondent offered to find her full-time employment with his daughter's law firm. "R.H." testified that she never gave Respondent either her cellular phone number nor her home phone number, but that nonetheless, he acquired her telephone numbers and began calling her. She testified that Respondent would make late night calls to both her cell and home phones which were of no substantive matter, something she found discomforting. The record shows that on or about February 5, 2000, Respondent made an unsolicited telephone call to "R.H.," during which

time he made sexually suggestive comments. On the occasion at hand, Respondent made a morning call to "R.H." while she was getting ready to go to school. She testified that she told him she was going to take a shower and he responded in a sexually suggestive manner. "R.H." testified that:

[he wanted me] to think about him in the shower while I'm in the shower rubbing myself. To think about him touching me.

According to "R.H.," this was his last call and no contact was made until the following month in March within his chambers.

The record shows that on or about March 20, 2000, during regular court hours, Respondent engaged in inappropriate non-consensual physical touching of "R.H." while the two were meeting in his chambers in Falfurrias, Brooks County, Texas. "R.H." testified that she was visiting the judge's secretary, Sandra Barrera, and Barrera asked "R.H." to "grab the Judge a soda." Barrera's phone then rang, so "R.H." handed the soda to Respondent in his chambers. As "R.H." was walking toward Respondent to deliver the soda, Respondent walked towards the door and shut it, making it difficult for her to leave. "R.H." further testified that Respondent told her about a county commissioner who was considering making her job with the District Attorney's Office full-time, rather than part-time, with benefits. According to "R.H," she stated that she "better go" and the conversation shifted to Respondent asking for a hug. Believing Respondent was joking, she said, "No." "R.H." testified that Respondent stated, "No, come on, give me a hug." "R.H." kept saying "no" and he kept asking. "R.H." stated that she finally "just put my arms out to let him hug me." According to "R.H.," she agreed to give him a hug hoping she would then be able to leave.

"R.H." testified that while she did agree to hug Respondent, she did not consent to being fondled and related Respondent' actions as follows:

[h]e hugged me underneath my arms. And he touched my butt, put his hands on my butt and tried lifting my dress. I was wiggling holding my hands up at his chest and—[sic] just keep him away.

"R.H." testified that soon after, Respondent asked her to sit down on his couch to continue their discussion. She told him that she "better get going," but Respondent insisted that she sit down. Respondent then put his hand inside her sleeveless dress and pulled out her bra strap. "R.H." testified that:

And he said, 'Oh, I like black.' And then he put his hand on my knee and tried lifting my dress and said, 'Now let's see if these are matching.'

Finally, "R.H." testified that she stood up and pulled her dress down and walked towards the door, but that Respondent put one hand on the door, the other hand around her waist, pushed himself against her, moaned as he kissed her ear and cheek, and would not otherwise release her. "R.H." believed that she was able to leave the judge's chambers when Respondent heard people approaching.

In reviewing only the evidence that tends to support the Commission's findings and disregarding all evidence to the contrary, we find more than a scintilla of evidence to support the findings of the Commission with regards to "R.H.'s" complaint. Similarly, having reviewed the record in its entirety to determine whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust, we find that there is factually sufficient evidence to support the findings of the Commission with regard to "R.H.'s" complaint.

For the reasons set forth above, we overrule Issue No. Seven in its entirety.

### 3. Constitutional Complaint

██ In Issue No. Eleven, Respondent argues, without the benefit of any citation or references to the record, that his rights under the U.S. and Texas Constitutions were violated as a result of the manner in which the proceedings were conducted, the standards and procedures applied, the conclusions drawn, and the recommendations made. We note that despite the serious nature of the consequences of this proceeding, Respondent has wholly failed to cite *any* authority to support his contention that his constitutional rights were violated. *See* TEX.R.APP. P. 38.1(h); *Leyva v. Leyva,* 960 S.W.2d 732, 734 (Tex.App.-El Paso 1997, no writ) (failure to cite authority in support of point of error waives complaint). Moreover, Respondent does not even provide *any* analysis of this issue. To the contrary, a conclusory statement is made that Respondent's rights were violated. We find that as in the case of appeals in civil cases, complaints in cases brought pursuant to the RULES FOR THE REMOVAL OR RETIREMENT OF JUDGES, failure to advance legal analysis, legal citations, and appropriate references to the record will serve as the foundation for waiver of such complaints on appeal. Accordingly, this complaint is waived, and we will not address it. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex.1994) (citing long-standing rule that a point may be waived due to inadequate briefing). Respondent's Issue No. Eleven is overruled.

### 4. Issues on the Propriety of the Sanction Assessed

██ In Issues No. Nine and No. Ten, Respondent suggests that the Commission's recommendation of removal and permanent bar from holding office is excessive. We examine that in light of our sustaining Issue No. Three, and not having to address Issues No. One, No. Two, and No. Five which are collateral.

██ The Texas Judicial Conduct Commission is authorized to perform three fundamental tasks: (1) to investigate claims of misconduct and to bring and pursue formal or informal charges; (2) to hold an adjudicative hearing and make findings of fact; and (3) to recommend or order a final disposition to those charges. *See generally* TEX. CONST. art. V, § 1-a (1993); *see also* JEFFREY M. SHAMAN ET AL., JUDICIAL CONDUCT AND ETHICS, § 13.03 (3d ed. 2000). The investigations and deliberations of the Texas Judicial Conduct Commission may result in: (1) dismissal of the complaint; (2) public or private order of additional education in combination with a public or private sanction; (3) public or private admonition, warning or reprimand; (4) the acceptance of a voluntary agreement to resign from judicial office in lieu of disciplinary action, or (5) formal proceedings for the removal or the involuntary retirement of the judge from the bench. TEX. CONST. art. V, § 1-a(8).

In the instant case, the Commission, after the hearing and upon considering the record and reports filed, found good cause to recommend to this review tribunal that Respondent should be removed from office and forever barred from holding judicial office.[12] The recommended sanction is the most severe consequence for judicial

---

**12.** Inherent in the duties and responsibilities of the Commission is the obligation to conduct a fully and complete investigation, and upon conclusion of such investigation, explore all authorized avenues of disposition, including all lesser sanctions. TEX.R. REM'L/ RET. JUDGES, Rule 10(m).

misconduct provided for in the Texas Constitution. The severity of contesting the recommendation of removal from office is illustrated by the fact that if the order of removal is sustained, the offending judge forfeits all of her or his retirement annuity.[13] TEX. GOV'T CODE ANN. § 834.004 (Vernon's 2003); *see also* TEX. GOV'T CODE ANN. § 839.003. Respondent has chosen to contest the recommendation of removal.

 Upon a finding of judicial misconduct, the imposition of sanctions must necessarily be decided on a case-by-case basis. In determining whether a recommended sanction is excessive or otherwise appropriate, a review tribunal must remain mindful that the primary purpose of the Texas Code of Judicial Conduct, and all its ancillary rules, is to protect the citizens of Texas, rather than to discipline judges. In an era of increasing partisanship, legislative bickering, and social turmoil, it is the judiciary that is most often called upon to resolve differences, and lend order and calm. The Texas judiciary must be the guidon of the banner representing stability, impartiality, and fairness in our State. Consequently, we emphasize that the standard for judicial conduct in the State of Texas must be more than effortless obedience to the law, but rather, must be conduct which constantly reaffirms one's fitness for the high responsibilities of judicial office and which continuously maintains, if not furthers, the belief that an independent judiciary exists to protect the citizen from both government overreaching and individual self-help. *See generally In re Barr*, 13 S.W.3d at 532.

In the instant case, we are not faced with a *single* instance of sexual impropriety by a member of the Texas judiciary, acting in his individual capacity, in the privacy of his home. Rather, we find Respondent, who in his judicial capacity, and in his judicial chambers, engaged in the inappropriate, unsolicited, sexually suggestive conduct which included sexual advances by forcibly kissing and fondling two young women. The women included an eighteen-year-old part-time employee with the Brooks County District Attorney's Office, and the twenty-one-year-old pregnant daughter of his court bailiff.[14]

Integrity is the very essence of the judicial vocation. Respondent has brought the judiciary into disrepute and has violated the trust of the people who placed him in office. Respondent's actions damaged public confidence in the integrity of the judiciary. In the instant case, it is not merely a question of whether Respondent accepted the responsibility of becoming familiar with and complying with the Code of Judicial Conduct and of upholding the integrity of the judiciary, but rather, whether he knew right from wrong. In any society, the unwelcome sexual advances of one in authority over another is wrong. The actions of a judicial officer in pursuing such advances, in chambers, as to another individual regardless of whether the victim

---

13. TEX. GOV'T CODE ANN. §§ 834.004 and 839.003 in identical language, provide as follows:

 An annuity that is based on service of a member who is removed from judicial office by impeachment, or otherwise for official misconduct, may not be paid under this subtitle.

14. We note once again that we examine the sanctions levied against Respondent on the basis of his conduct involving two young women. We have sustained Respondent's Issue No. Three and its ancillary points on procedural grounds. Issue No. Three alleged similar sexual misconduct said to have occurred in August 1995. The record does establish ample, unobjected to evidence of sexual misconduct having taken place in August 1996.

is a public servant or the pregnant daughter of the court bailiff, is to be condemned.

Given the facts and circumstances detailed above, we find that the recommendation of removal from office is appropriate to protect the citizens of Texas and certainly is not excessive. Further, we likewise find the recommendation that he be prohibited from holding judicial office in the future not to be excessive. Issue Nos. Nine and Ten are overruled in their entirety.

Having sustained Issue No. Three, and not having to address Issue Nos. One, Two and Five, and further having overruled each of Respondent's remaining issues on review, we affirm the recommendation of the State Commission on Judicial Conduct that Respondent be sanctioned. We accept the recommendation that Respondent,

Terry A. Canales be removed as Judge of the 79th Judicial District Court of the State of Texas, and further accept the recommendation that he be forever barred from holding judicial office in the State of Texas.

**TERRY A. CANALES IS HEREBY REMOVED AS JUDGE OF THE 79TH JUDICIAL DISTRICT COURT OF THE STATE OF TEXAS AND IS FOREVER BARRED FROM HOLDING JUDICIAL OFFICE IN THE STATE OF TEXAS.**