**In re Thurman Bill BARTIE, Justice of the Peace, Precinct 8 Port Arthur, Jefferson County, Texas.[1]**

**No. 90.**

Review Tribunal, Appointed by Supreme Court of Texas.

April 16, 2004.

---

1. The Review Tribunal was composed of Hon. Kenneth Law, Chief Justice, Third District Court of Appeals, Austin, designated Presiding Justice; Hon. Bill Vance, Tenth District Court of Appeals, Waco; Hon. Jack Carter, Sixth District Court of Appeals, Texarkana; Hon. Catherine Stone, Justice, Fourth District Court of Appeals, San Antonio; Hon. David Wellington Chew, Eighth District Court of Appeals, El Paso; Hon. James T. Worthen, Chief Justice, Twelfth District Court of Appeals, Tyler; and Hon. John S. Anderson, Fourteenth District Court of Appeals, Houston.

Christopher T. Kirchmer, Provost & Umphrey Law Firm, L.L.P., Beaumont, for respondent.

## OPINION

STONE, Justice.

This is an appeal from the recommendation of the Texas State Commission on Judicial Conduct that Respondent, Thurman Bill Bartie, be removed as Justice of the Peace, Precinct 8 of Port Arthur, Jefferson County, Texas, and further, that he be forever barred from holding judicial office in this State.[2] The Commission found that Respondent, while in his judicial capacity, used obscene language in the courtroom; failed to follow the law; exhibited incompetence in the law; attempted to interfere in the lawful arrest of an individual; and participated in or used corporal punishment in certain truancy matters before his court. Respondent has rejected the findings, conclusions, and recommendations of the Commission and in response, challenges the findings and ultimate recommendation that he be removed from office and permanently barred from seeking judicial office in the future. We affirm the Commission's recommendation.

### APPELLATE COMPLAINTS

Respondent advances four reasons why this Review Tribunal should reverse the

---

2. On December 12, 2003, the Supreme Court appointed a Review Tribunal to review the Commission's recommendation regarding the removal of Respondent from office. The ac- tion was brought in accordance with TEX CONST. art. V, § 1–a and the TEX. R. REM'L/RET. JUDGES, 56 TEX. B.J. 823 (1993), promulgated by the Texas Supreme Court on May 22, 1992.

Commission's findings and reject the Commission's recommendation that he be removed and forever barred from holding judicial office: (1) the Commission's findings omitted all of the Special Master's findings favorable to him; (2) the evidence is factually insufficient to support the Commission's findings; (3) the Commission acted outside the scope of its mission and authority when it actively worked with complaining witnesses to develop the initial complaints against him; and (4) the Commission's recommendations are not appropriate under the facts and circumstances. We note that Respondent has failed to cite any authority in support of his contentions. Ordinarily the failure to cite authority in support of a claim of error waives the complaint. Tex. R. App. P. 38.1(h); *Leyva v. Leyva*, 960 S.W.2d 732, 734 (Tex.App.El Paso 1997, no writ). This is also true in the review of judicial discipline proceedings. *See In re Canales*, 113 S.W.3d 56, 68 (Tex.Rev.Trib.2003). In light of the severity of the discipline imposed in this case, however, this Tribunal will address the merits of Respondent's claims even in the absence of cited authority.[3]

## Summary Of The Evidence

The record before this Tribunal reveals several incidents giving rise to the complaints against Respondent. Because the factual sufficiency of the evidence is challenged, we review each incident.

### The Bush Case

In May 2002 Tammie Bush and her daughters, Manya and Matya appeared before Respondent on charges stemming from the daughters' alleged truancy. During the course of the proceeding Respondent used obscene language in the courtroom. Additionally, Bush and her daughters were not asked to enter a plea regarding the charges, were not informed of their right to a jury trial, and were not asked to waive a jury trial. During the course of the proceedings, in an effort to maintain control in the courtroom, Respondent ordered that Bush and Matya be handcuffed for the duration of the proceedings. Ultimately, Respondent found Bush and Matya guilty of the charges against them, and imposed a fine of $582 against Bush and a fine of $3,496 against Matya. Without conducting an indigency hearing or otherwise inquiring about their ability to pay the fines, Respondent ordered both women to pay their fines in full that day or be sent to jail. Bush spent approximately three hours in jail before she was able to pay her fine. Matya was jailed for seven days in the Jefferson County Jail before she was released on bond.

### The Lewis Case

Also in May of 2002, Gwen Lewis and her son appeared before Respondent on charges that her son had failed to attend school. Lewis attempted to dispute the school's attendance dates regarding her son, and according to Lewis, Respondent responded with obscene language. When Lewis objected to the use of such language, Respondent threatened to jail her son.

### The Jerry Jordan Incident

While investigating allegations that Respondent was abusive to litigants in his courtroom, Jerry Jordan, a local newspaper reporter, attempted to observe proceedings in the court. Respondent had his clerk inquire about Jordan's purpose in the courtroom. Jordan verbally protested when he was asked to leave the courtroom.

---

**3.** We note that Respondent resigned his position on December 19, 2003, to pursue "other political interests." Nevertheless, in the interest of justice and at his request, we address the Commission's decision to remove him from office.

Respondent replied with obscene language and referred to Jordan as a racist.

## Magistration Duties

On various occasions while magistrating inmates at the Jefferson County Correctional Facility, Respondent threatened defendants, in descriptive obscene language, that he intended to engage in sexual relations with the defendants' wives while the defendants were incarcerated.

## The Lonnie McIntyre Incident

In February of 2002 Respondent approached two Port Arthur police officers as they were engaged in an investigative detention of Lonnie McIntyre for suspected driving while intoxicated. Respondent introduced himself as Judge Bartie and as McIntyre's brother-in-law. Respondent asked several times to be allowed to drive McIntyre's vehicle from the scene. Respondent abandoned his request to drive the vehicle away when two rocks of crack cocaine were found in the vehicle. Respondent ordered McIntyre's release on a personal recognizance bond, which Respondent himself later signed.

## Incidents of Corporal Punishment

The record reveals that in addition to the use of abusive obscene language, Respondent engaged in corporal punishment of juveniles who appeared before him on truancy charges. Respondent threatened to hit juveniles on the head with his gavel, punched a juvenile in the chest, and hit another juvenile on the head with his knuckles. Respondent also took his belt off and handed it to parents and encouraged the parents to whip or beat their children with the belt. These events took place in the courtroom. On at least one occasion, Respondent brought juvenile twin brothers into his chambers and engaged in corporal punishment.

## DISCUSSION

### Sufficiency of the Evidence

 Respondent's first, second, and fourth complaints essentially challenge the factual sufficiency of the evidence to support the Commission's findings. The Commission's adopted findings of fact are reviewable for factual sufficiency of the evidence to support them by the same standard applied in reviewing the factual sufficiency of the evidence supporting findings in a civil case, either by a trial court or by a jury. *In re Canales*, 113 S.W.3d at 68. Under a factual insufficiency issue, we examine all of the evidence to determine whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* at 68–69. "As in appeals of civil matters, this Review Tribunal cannot substitute its findings for those of the Commission." *Id.* at 69. We must sustain the Commission's findings and recommendations if there is sufficient competent evidence of probative force to support them. *Id.* "It is not within the province of this Review Tribunal to interfere with the Commission's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony." *Id.* The findings of the Commission on such matters will be regarded as conclusive where there is conflicting evidence. *Id.*

Respondent contends that the Commission is biased against him because it adopted all of the Special Master's findings, except for three general findings of fact that Respondent says favor him.[4] Re-

---

4. The three findings not adopted by the Commission which Respondent claims favor him state as follows:

3. Judge Bartie's concept of his position, in part, is to try to motivate children in his courtroom.

spondent also argues that the findings and conclusions are against the great weight and preponderance of the evidence. We disagree.

The overwhelming evidence in this case establishes that Respondent repeatedly utilized extremely obscene language in his courtroom.[5] Respondent admitted to his use of obscene language in the courtroom, although he did not admit to all of the instances found by the Commission. Dana Graham, who served as chief clerk in Respondent's court, testified that Respondent used obscene language throughout his tenure in office. Her testimony was echoed by the testimony of the deputy clerk, Ha Nguyen, and by a deputy constable and a deputy sheriff. All of these witnesses testified that Respondent's language and conduct exhibited disrespect for the litigants before him. We acknowledge Respondent's proclaimed subjective belief that his language was warranted to "get through" to the litigants, and his denial of certain instances of use of obscene language. However, the Commission is charged with making credibility determinations and resolving conflicts in the evidence, and this Tribunal will not interfere with those determinations. *See In re Barr*, 13 S.W.3d 525, 534 (Tex.Rev.Trib.1998).

■ The record overwhelmingly establishes that Respondent's use of obscene language constitutes a wilful violation of his duty to "be patient, dignified and courteous to litigants and others with whom the judge deals in an official capacity...." *See* TEX. CODE JUD. CONDUCT, Canon 3B(4), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. B (Vernon 1998). The term "willful" as used in TEX. CONST. art. V, § 1–a(6) A is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross indifference to his conduct. *In re Thoma*, 873 S.W.2d 477, 489 (Tex.Rev.Trib.1994). Respondent's repeated use of obscene language is inconsistent with the proper performance of his duties and "casts public discredit upon the judiciary or administration of justice." *See* TEX. CONST. art. V, § 1–a. The nature and frequency of the extremely obscene language employed by Respondent are, standing alone, sufficient to warrant his removal from office and the prohibition from holding judicial office in the future.[6] Accordingly, we overrule Respondent's appellate issues one, two, and four.

## Commission Authority

■ In his third appellate issue, Respondent contends the Commission exceeded its authority and mission of investigating allegations of judicial misconduct when it solicited testimony from certain witnesses and "reworked" witnesses' affidavits. In essence, Respondent claims the Commission provided legal assistance to the various complainants. The record, however, does not support his claim.

4. Judge Bartie has members of his community that approve of his courtroom performance.
5. Judge Bartie truly believes that many of his actions were warranted in convincing truant children to regularly attend school.

5. Due to the offensive nature of the language utilized by Respondent, we have omitted the actual language used by Respondent from this opinion. We note, however, that the record clearly shows Respondent, while sitting in his judicial capacity, used some of the most vulgar and offensive language imaginable.

6. In light of our determination that the obscene language charges are alone sufficient to justify the removal and permanent bar from judicial office, we do not address the sufficiency challenges as they relate to the allegations of legal incompetence, interference with an arrest, and use of corporal punishment.

Matya Bush and her daughter Colitha Bush both testified that they provided the Commission's investigator with handwritten notes and provided videotaped statements. Ultimately they signed written affidavits typed by the investigator. They acknowledged their handwritten notes and the typewritten affidavits were not identical. Nonetheless, they emphatically testified their affidavits correctly reflected their statements, and that any differences between the two documents merely reflected attempts to correct spelling, grammar, repetition, and reference to statements that would not be admissible in court. Based on this record, we cannot say that the Commission exceeded its authority. Respondent's fourth issue is overruled.

This Tribunal is mindful that the primary purpose of the Texas Code of Judicial Conduct is to protect the citizens of this State, not to punish or discipline judges. *See In re Barr,* 13 S.W.3d at 533. This case illustrates that at times there is a dire need for the Commission to step in and protect the public. Through his use of abusive and obscene language, Respondent was able to intimidate juvenile litigants and their parents, criminal defendants, civil litigants, a newspaper reporter, and even his staff. As Respondent's court clerk stated, she knew "with this judge that we needed help, that Judge Bartie had gotten out of control. I hoped that the Judicial Conduct would come to my aid I hope[d] that the Judicial Conduct would do what needs to be done." The Judicial Conduct Commission has done what needed to be done, and we affirm their recommendation in all regards.

## ORDER

In accordance with this Tribunal's opinion of this date, we affirm and accept the recommendation of the State Commission on Judicial Conduct that Respondent, Thurman Bill Bartie, be removed as Justice of the Peace, Precinct 8, Port Arthur, Jefferson County, Texas, and further affirm and accept the recommendation that Respondent be forever barred from holding judicial office in the State of Texas. Pursuant to Rule 14, Texas Rules for Removal or Retirement of Judges, NO MOTION FOR REHEARING WILL BE ENTERTAINED.

**Thurman Bill Bartie is hereby removed as Justice of the Peace, Precinct 8, Port Arthur, Jefferson County, Texas and is forever barred from holding judicial office in the State of Texas.**