**In the Matter of Emilio "Chito" DAVILA.**

No. C–745.

Supreme Court of Texas.

Feb. 10, 1982.

Rehearing Denied May 12, 1982.

Maurice Pipkin, Executive Director of Com'n on Judicial Conduct, Max Fluche, Atty. for Com'n, Austin, for relator.

Arthur Mitchell, Bastrop, Emilio Davila, Jr., Laredo, Fernando D. Gutierrez, Austin, for respondent.

OPINION

PER CURIAM.

This suit is to remove Emilio "Chito" Davila from the elected office of Judge of the County Court at Law, Webb County, Texas. The suit is brought by the State Commission on Judicial Conduct under the Rules for Removal or Retirement of Judges. The Rules[1] are established by this Court under authority of Article V, Section 1–a(11) of the Texas Constitution. The Commission issued a Public Censure and a Public Reprimand against Judge Davila. The Commission then filed with the Clerk of this Court the entire record of the proceedings, and findings of fact and conclusions of law. The Commission recommended the removal of Judge Davila from his judicial

1. All references to the rules are to The Rules for The Retirement or Removal of Judges Adopted by the Supreme Court of Texas September 19, 1966, Amended July 20, 1971, Amended February 27, 1978.

post and suspension from office, without pay, pending final determination. This Court, by Per Curiam Opinion dated October 14, 1981, suspended Judge Davila, with pay, pending final disposition by this Court. We disapprove the Commission's recommendation for removal from office.

On May 5, 1980, the Commission issued to Judge Davila a notice of preliminary investigation. On July 10, the Commission issued notice of formal proceedings. The Honorable Guy Hazlett, Judge of the 316th Judicial District Court, Hutchinson County, was appointed as master by this Court.

The allegations in the notice of formal proceedings were that Judge Davila:

1. Appointed his son-in-law, Roger Rocha, as attorney and attorney ad litem in cases before the Webb County Court at Law and approved payment from public funds in violation of article 5996a (the nepotism statute).[2] There were twenty-six appointments for which the son-in-law was paid $2,325.00.

2. Wrongfully sat in judgment in those cases because he was connected within the third degree by affinity in violation of article 15.

3. While serving as magistrate, on May 12, 1980, upon oral complaint, verbally ordered an arrest for an offense not committed in his presence.

4. Was involved in a motor vehicle accident on October 30, 1979, and failed to stop and give his name, address, and other particulars in violation of article 6701d § 40.

The master, in findings of fact, found that each of these acts was committed by Judge Davila.

The master further found the Judge is industrious in carrying out the duties and responsibilities of his office. He is courteous to litigants, lawyers, witnesses, and court personnel. He maintains proper decorum in the courtroom and maintains a dignified, judicious demeanor. Judge Davila is considered fair to the litigants, listens to the facts and evidence and does his best to give a fair judgment based on the facts. He is considered non-discriminatory and unbiased. He is believed to possess a great deal of common sense. Finally, the master found the Judge has continued to so conduct himself from the inception of the removal proceedings to the date of the inquiry hearing.

The Commission, on May 1, 1981, considered the master's report. At this hearing Judge Davila testified about these matters. He was also questioned about a matter not alleged in the notice of formal proceedings: the appointment of his son-in-law, Roger Rocha, as master in chancery in a pending divorce case and the payment to him of a fee. In addition, he stipulated he would not again violate the Nepotism Laws by appointments or sitting in judgment.

The Commission, on May 4, publicly censured the Judge for the twenty-six acts of nepotism and for failure to stop and give information or render aid after the accident. The Commission publicly reprimanded him for the appointment of his son-in-law as master in chancery in the divorce case and for awarding excessive fees for the service. The Commission also warned him of the consequences of any future improper appointments. The examiner distributed these orders to the news media in the Judge's electoral district. The Judge was thus punished in accordance with the decision of the Commission.

On July 10, 1981, the Commission was informed of an estate matter in Judge Davila's court. It was alleged the Judge had favored his son-in-law. This entire matter predated the hearings held before the master and the Commission. However, on August 7, the Commission reopened the case and issued an amended second notice of formal proceedings. Two charges were added: that on February 24, 1981, the Judge favored his son-in-law by appointing him master in chancery; and in August 1979, the Judge pursued, in a probate matter, a course designed to confer a financial

2. All statutory references are to Vernon's Texas Civil Statutes Annotated.

benefit to his son-in-law. This notice was later amended to include two more allegations: that on February 17, 1979, Judge Davila appointed his son-in-law, Joe Nieta III, as a special commissioner in a condemnation case and ordered him paid $200.00, in violation of article 5996a; and that on May 1, 1981 Judge Davila testified falsely before the Commission. The Commission then recommended the removal of Judge Davila by this Court.

■ It is the right and duty of this Court to determine whether the evidence taken by the master and by the Commission supports the charges and constitutes grounds for removal. This duty is not entrusted to a master or any other agency. Rule 23.

■ As to the perjury charges we hold there is no evidence to support them and they are dismissed. Frivolous charges or charges involving no more than mistakes of judgment honestly arrived at or the mere erroneous exercise of a discretionary power entrusted by law to a judge, will not be entertained by this Court as grounds for removal. Perjury is committed by making a deliberate and willful false statement under oath. *City of San Antonio v. Poulos*, 422 S.W.2d 140, 143–44 (Tex.1967). The branding of any person with a charge of perjury should not be taken lightly.

The first allegation of perjury arises from Judge Davila's appointment of his son-in-law, Roger Rocha, as master in chancery. The Commission's position is that the attorneys in the cause agreed that Honore Ligarde was to be appointed master, but the Judge appointed his son-in-law. The Commission contends the Judge perjured himself in his testimony about being presented an order for his signature appointing Honore Ligarde. The following is an excerpt of the examiner's questions and the Judge's answers:

Q. Now, prior to the time that you signed this order, was there another proposed order presented to you with the name of another attorney on it as a proposed master in chancery?

A. I don't recall at this point in time, but it may have been.

Q. Isn't it a fact that another order was presented to you proposing, and both counsel agreed, that Honore Ligarde would be appointed as master in chancery?

A. The order was not presented to me. The name was suggested to me told that they wanted Honore Ligarde.

Q. And you, on your own motion, appointed Honore Ligarde?

A. After they agreed. They had no objections. Neither did Mr. Gonzales, or Mr. Hall, or Mr. Julio Garcia, or Mr. Flores.

On the last question, we are confident the examiner intended the name of Roger Rocha instead of Honore Ligarde. Judge Davila answered that Roger Rocha had been appointed.

On the other two counts of perjury, the Commission has not directed us to any testimony, either in its briefs or in oral argument, indicating perjury. Therefore, we do not discuss these counts.

Judge Davila had no prior notice of the perjury allegations, or that he was to be questioned about them. Considering this and the testimony, we hold there is no evidence to support a finding of a willful and deliberate false statement made under oath.

The Texas Constitution provides for the removal of any judge for willful or persistent conduct which is clearly inconsistent with the proper performance of the judge's duties, or casts public discredit upon the judiciary or administration of justice. Alternatively, it provides any person holding such office may be censured in lieu of removal from office. TEX.CONST. art V, § 1–a(6)A.

■ Removal from office is not the price exacted for every judicial mistake and misdeed. Appellate courts, through review of proceedings, provide for the correction of most departures from judicial standards. *In re Brown*, 512 S.W.2d 317, 322 (Tex. 1974). Our question is whether the acts alleged, other than the perjury counts, constitute willful and persistent conduct, which

is clearly inconsistent with the proper performance of Judge Davila's duties, or casts public discredit upon the judiciary or administration of justice. We hold each of the acts alleged, except the perjury counts, have been established. We also hold the acts constitute willful and persistent conduct, which is clearly inconsistent with the proper performance of the Judge's duties.

Our next question is whether the acts of misconduct merit removal from office. We hold they do not. Judge Davila previously has been censured for the twenty-six acts of nepotism and publicly reprimanded for leaving the scene of the accident. The master found Judge Davila to be very judicious in the operation of his court. At the May 1981 hearing, he stipulated he would make no appointments of relatives in violation of the nepotism laws. The Commission found him to be well motivated to modify his conduct and to avoid recurrences of these or similar acts of misconduct. The other alleged acts of misconduct predate the censure, reprimand, and Judge Davila's promise not to commit any additional improprieties.

Judge Davila is reinstated to the office of Judge of the County Court at Law of Webb County.