In re Martha CHACON, Judge No. 89, Justice of the Peace, Precinct No. 2, Eagle Pass, Maverick County, Texas.

No. 89

Review Tribunal, Appointed by Supreme Court of Texas.

April 26, 2004.

Dinah Gaines, San Antonio, Claudio Heredia, Eagle Pass, for petitioner.

Seana Willing, Executive Director, Bob Warneke, General Counsel, State Commission of Judicial Conduct, Austin, Frank R. Rivas, Special Counsel, San Antonio, for examiner/respondent.

## OPINION

HEDGES, Chief Justice.

Before this Review Tribunal[1] is an appeal from the recommendations of the Tex-

1. The Review Tribunal appointed by the Supreme Court of Texas is composed of Hon. Lee Ann Dauphinot, Justice, Second Court of Appeals, Fort Worth, designated Presiding Justice; Hon. Adele Hedges, Chief Justice, Fourteenth Court of Appeals, Houston; Hon. Phylis Speedlin, Justice, Fourth Court of Appeals, San Antonio; Hon. Martin Richter, Justice, Fifth Court of Appeals, Dallas; Hon. Donald R. Ross, Justice, Sixth Court of Appeals, Texarkana; Don H. Reavis, Justice, Seventh Court of Appeals, Amarillo; and

as State Commission on Judicial Conduct ("Commission") that Respondent Martha Chacon be removed as Judge No. 89, Justice of the Peace, Precinct No. 2, Eagle Pass, Maverick County, Texas, and further, that she be prohibited from holding State judicial office in the future. The Commission adopted the majority of the findings of the Special Master and found that Respondent exhibited incompetence in the law and misused her authority in the performance of her official duties. Respondent has rejected the findings, conclusions, and recommendations of the Commission and, in response, challenges the findings and ultimate recommendations that she be removed from office and prohibited from seeking judicial office in the future. We affirm the Commission's recommendations.

## Procedural History

The record in the present case establishes that on October 7, 2002, Respondent was served with a Notice of Formal Proceedings.[2] On January 23, 2003, the Supreme Court of Texas, upon request of the Commission, appointed the Honorable Frank Montalvo as Special Master to hear evidence on the charges and report thereon to the Commission. On July 21–23, 2003, the Special Master conducted a formal hearing on the merits at the Maverick County Courthouse in Eagle Pass, Texas. On August 6, 2003, the Special Master filed his Findings of Fact, in which he concluded that Respondent's judicial conduct exhibited incompetence in the law and the willful or persistent misuse of her authority by allowing her personal relationships to influence her judgment in the performance of her official duties.

On October 8, 2003, a hearing before the Commission was held in Austin, Texas, regarding Respondent's Statement of Objections to the Report of the Special Master. On January 6, 2004, the Commission filed its Findings, Conclusions, and Recommendations, in which the Commission, taking its previous rulings on Respondent's objections into consideration, adopted and affirmed the Special Master's Findings of Fact. In a letter to the Supreme Court of Texas dated January 6, 2004, the Commission requested that the Court appoint a Review Tribunal as provided by Article V, Section 1–a(9) of the Texas Constitution. On January 14, 2004, the Supreme Court appointed this Review Tribunal to review the Commission's recommendations that Respondent be removed from office and prohibited from holding judicial office in the future.

## Judicial Misconduct

The review of evidence concerning allegations of judicial misconduct is certainly not an obligation which the members of this Tribunal take lightly. An opinion issued by a previous Review Tribunal reminds us that the standards to which we hold ourselves must be higher than those observed elsewhere:

In a civilized society, members of the judiciary are significant public figures whose authority necessarily reaches all points within their respective jurisdiction[s], if not beyond. Members of the judiciary of the State of Texas, whether a municipal judge in Fort Stockton, a justice of the peace in Cameron County, the county court at law judge in Liberty County, a state district judge in Ozona, a

---

Hon. Felipe Reyna, Justice, Tenth Court of Appeals, Waco.

2. The action was brought in accordance with Article V, Section 1–a (1993) of the Texas

Constitution and the Rules for Removal or Retirement of Judges, 56 Tex. B.J. 823 (1993), promulgated by the Supreme Court on May 22, 1992.

justice on the Sixth Court of Appeals, Texarkana, or the Chief Justice of the Texas Supreme Court, all serve as the collective guidon of the banner representing fairness and impartiality in our state. It is for this reason, plus others, that the judiciary must nurture and maintain respect for their decisions, as well as the judiciary of the State of Texas as a whole. The Texas jurist must be held to the highest standards of integrity and ethical conduct, much more so than the standards to which members of the executive and legislative branches are held accountable. Consequently, the ultimate standard for judicial conduct in the State of Texas must be more than effortless obedience to the law, but rather, must be conduct which constantly reaffirms one's fitness for the high responsibilities of judicial office and which continuously maintains, if not furthers, the belief that an independent judiciary exists to protect the citizen from both government overreaching and individual self-help.

*In re Barr*, 13 S.W.3d 525, 532 (Tex.Rev. Trib.1998). It is with this solemn reminder that we consider below Respondent's challenges to the Commission's Findings, Conclusions, and Recommendations.

### Summary of the Evidence

The record before this Tribunal reveals several incidents giving rise to the complaints against Respondent. Because the factual sufficiency of the evidence is challenged, we review each incident below.

*Jose Francisco Gonzalez and Melissa Villegas*

In or around October 2000, Jose Francisco Gonzalez and Melissa Villegas executed a contract with Oscar Reyna ("Reyna") in which Reyna agreed to build a house on a lot they owned. Reyna had no interest in the real property. Upon completion of the house, the parties had a disagreement. Reyna filed a complaint for forcible entry and detainer in Respondent's court on or about May 15, 2001. Gonzalez was served with notice of the suit the next day, and the citation instructed him to appear in court on May 18, 2001, at 11:00 a.m. The citation was defective under Rule 739 of the Texas Rules of Civil Procedure[3] in that it gave him inadequate notice of the hearing and did not inform him of the right to request a jury trial. Villegas was never served. The attorney for Gonzalez and Villegas asserted in a legal brief that the court had no jurisdiction over this claim because it involved a question of title to land. Respondent granted Reyna his requested relief. Gonzalez's appeal to the county court was unsuccessful.

On July 2, 2001, Respondent authorized the issuance of writ of possession for the property in favor of Reyna. The writ was served the next day. On July 10, at around 10:45 a.m., Maverick County Deputy Sheriff Juan Garcia executed the writ. Reyna and his employees helped remove the personal property of Gonzalez and Villegas from the house under the supervision of Deputy Garcia. Gonzalez and Villegas were not told where their personal property was being taken.

---

**3.** That Rule provides: "When the party aggrieved or his authorized agent shall file his written sworn complaint with such justice, the justice shall immediately issue citation directed to the defendant or defendants commanding hm to appear before such justice at a time and place named in such citation, such time being not more than ten days nor less than six days from the date of service of the citation. The citation shall inform the parties that, upon timely request and payment of a jury fee no later than five days after the defendant is served with citation, the case shall be heard by a jury." Tex.R. Civ. P. 739.

Sheriff dispatcher Alejandro Espinoza received a call at about 2:05 p.m. from Respondent. She advised him to instruct Deputy Garcia to arrest Gonzalez and Villegas for contempt of court arising from their interference with Deputy Garcia's duties. None of the actions taken by Gonzalez and Villegas took place in Respondent's court or in her presence. Gonzalez was arrested for contempt of court. At the Maverick County jail, he was processed on the charge of interfering with a peace officer's duties, not for contempt of court. On his booking card there is an unexplained white-out alteration.

Deputy Garcia testified as follows: he made a mistake regarding the actual charge. Based on Gonzalez's interference with the execution of the writ, Garcia made an independent judgment call to arrest Gonzalez. Although Garcia contacted Respondent's office for advice, the decision to arrest Gonzalez was his alone.

*"Wrongful Accusations" Lawsuits*

In or around May 2001, Reyna filed a number of suits in Respondent's court in which he alleged that the defendants had made wrongful accusations against him on a local television talk show. The citations Respondent caused to be issued in these cases failed to comply with Rule 534 of the Texas Rules of Civil Procedure:[4] the citations omitted the address of the plaintiff or his attorney as required under Rule 534, and many of the defendants were given less than ten days' notice before their court appearances.

*Jesus Garza*

On May 30, 2000, Maria Hernandez filed a breach of contract action against Jesus Garza, alleging that Garza owed her 5,000 dollars. On June 14, 2000, Respondent authorized the issuance of a citation for Garza, instructing him to appear before her at 2:30 p.m. the next day to respond to the Hernandez suit. The citation was served on Garza at 1:28 p.m. on June 15, 62 minutes before he was scheduled to appear in Respondent's court. The citation failed to comply with Rule 534 in that notice was inadequate and the address of the plaintiff or her attorney was omitted. At Garza's request, Respondent rescheduled the matter.

4. That Rule provides in pertinent part:

(a) Issuance. When a claim or demand is lodged with a justice for suit, the clerk when requested shall forthwith issue a citation and deliver the citation as directed by the requesting party. The party requesting citation shall be responsible for obtaining service of the citation and a copy of the petition if any is filed. Upon request, separate or additional citations shall be issued by the clerk.

(b) Form. The citation shall (1) be styled "The State of Texas," (2) be signed by the clerk under seal of court or by the Justice of the Peace, (3) contain na.m.e and location of the court, (4) show date of filing of the petition if any is filed, (5) show date of issuance of citation, (6) show file number and na.m.es of parties, (7) state the nature of the plaintiff's demand, (8) be directed to the defendant, (9) show na.m.e and address of attorney for plaintiff, otherwise the address of plaintiff, (10) contain the time within which these rules require defendant to file a written answer with the clerk who issued citation, (11) contain address of the clerk, and (12) shall notify defendant that in case of failure of defendant to file an answer, judgment by default may be rendered for the relief demanded in the petition. The citation shall direct defendant to file a written answer to plaintiff's petition on or before 10:00 a.m. on the Monday next after the expiration of ten days after the date of service thereof. The requirement of subsections 10 and 12 of this rule shall be in the form set forth in section c of this rule.

(c) Notice. The citation shall include the following notice to defendant: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of ten days after you were served this citation and petition, a default judgment may be taken against you."
Tex.R. Civ. P. 534.

It developed at trial that the issue centered on disputed title to real property. Garza introduced evidence that property taxes had been paid by, and title was in the name of, Maria Garza. No lease was introduced to establish a landlord/tenant relationship. Both Hernandez and Garza asserted ownership of the real property. In her judgment in favor of Hernandez, Respondent awarded possession of the real property to Hernandez.

### Oscar Reyna

Reyna, who was on probation in Maverick County for felony theft, was scheduled to meet with his probation officer, Nelida Martinez, on December 9, 1999. Sometime before the scheduled meeting, Martinez was informed by Border Patrol agents that they intended to serve Reyna with paperwork regarding deportation proceedings. A few days before December 9, Respondent telephoned Martinez to discuss a letter Martinez had sent to Reyna scheduling the December 9 meeting. Respondent specifically inquired whether there was an outstanding warrant for Reyna in connection with his felony theft probation. Apprized by Martinez that there was none, Respondent stated that Reyna would honor the appointment. During the December 9 meeting, Border Patrol agents served Reyna with an arrest warrant and took him into custody.

On January 7, 2000, Reyna, his son, and Respondent appeared in Martinez's office. Respondent asked Martinez why Reyna had been arrested at the December 9 meeting. After Martinez explained the circumstances of the arrest, she asked Respondent and Reyna's son to leave her office so that she could speak to Reyna in private. They complied. Respondent had not been summoned to Martinez's office for any reason, and Respondent conducted no official business during the visit.

### Rebecca Ramirez

In or around July 2001, Oscar Reyna, Jr. ("Reyna, Jr."), the son of Oscar Reyna, filed a complaint against Ramirez for aggravated assault, allegedly committed at an Eagle Pass nightclub. According to Ramirez, she punched Reyna, Jr. in the mouth after he touched her in a sexually offensive way. Based on the complaint, Respondent issued a felony arrest warrant for Ramirez. About one month later, Ramirez was arrested. Respondent magistrated Ramirez and set bond at 40,000 dollars. Ramirez had no prior criminal record above a Class C misdemeanor, and there was no indication that she was a flight risk.

While Ramirez was in jail, someone contacted one of her relatives, Eddie Sandoval, who was a member of the Maverick County Commissioners' Court. Sandoval phoned Respondent and asked her to revisit the amount of Ramirez's bond. Respondent then approached Ramirez in jail and made the remark that Ramirez should have told her that Ramirez was related to Sandoval. Respondent then reduced the bail amount to four thousand dollars. After about 30 hours in jail, Ramirez was released on personal recognizance. She was not prosecuted for aggravated assault.

## Sufficiency of the Evidence

Respondent challenges the factual sufficiency of the evidence to support the conclusions and recommendations of the Commission.

### *Standard of Review*

■ The procedures established for the initial proceeding before the special master are to be conducted as nearly as practicable in accordance with the Texas Rules of Civil Procedure. TEX.R. REM'L/ RET. JUDGES, 56 Tex. B.J. 823 (1993). During the course of any hearing conducted in

the furtherance of formal proceedings, whether before a special master or the Commission, only legal evidence is to be received. *In re Thoma*, 873 S.W.2d 477, 485 (Tex.Rev.Trib.1994). Absent a statement of objections to the report of the special master, the Commission may adopt the findings of the special master as its own. TEX.R. REM'L/RET. JUDGES, 56 Tex. B.J. 823 (1993), Rule 10(j). The record in this case shows that the Commission considered Respondent's objections to the Special Master's Findings of Fact prior to issuance of its Findings, Conclusions, and Recommendations. Consequently, we hold that the findings of the Special Master, as adopted by the Commission, are tantamount to findings of fact ordinarily filed by a trial judge in a bench trial, and are therefore reviewable as such. *See Thoma*, 873 S.W.2d at 485.

 In reviewing for factual sufficiency, we examine all of the evidence to determine whether the finding in question is against the great weight and preponderance of the evidence such as to be considered manifestly unjust. *Thoma*, 873 S.W.2d at 485. This Review Tribunal may not substitute its views for those of the Commission. *Id.* If there is sufficient competent evidence of probative force to support the findings and recommendations, they must be sustained. *Id.* It is not within the province of this Tribunal to interfere with the Commission's resolution of conflicts in the evidence or to pass on the weight or credibility of the testimony of witnesses. *Id.* Where there is conflicting evidence, the findings of the Commission on such matters will be regarded as conclusive. *Id.*

### *Factual Sufficiency Complaints*

 The Commission concluded that Respondent's conduct constituted incompetence in violation of Article V, Section 1

a(6)(A) of the Texas Constitution, which provides in relevant part, that any judge may be removed from office, disciplined, or censured for "incompetence in performing the duties of the office" TEX. CONST. Art. V, § 1–a(6)(A); and of Canon 3(B)(2) of the Texas Code of Judicial Conduct, which provides in relevant part that a judge "shall maintain professional competence" in the law. TEX.CODE JUD. CONDUCT, Canon 3(B)(2), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. B (Vernon Supp.2003). It also concluded that Respondent's conduct constituted willful or persistent conduct in violation of Canons 2B of the Texas Code of Judicial Conduct, which provides in relevant part that a judge "shall not allow any relationship to influence judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge." TEX.CODE JUD. CONDUCT, Canon 2(B), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. B (Vernon 1998); and of 3(B)5 of the Texas Code of Judicial Conduct, which provides that: "[a] judge shall perform judicial duties without bias or prejudice." TEX.CODE JUD. CONDUCT, Canon 3(B)(5), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. B (Vernon Supp.2003).

### Incompetence Conclusions

#### *Defective Citations*

In Conclusion on Charge 2, the Commission concluded that "[i]n the matter of Jose Francisco Gonzalez and Melissa Villegas, Respondent failed to issue a citation that was in compliance with the requirements of [Texas Rule of Civil Procedure] 739." There is undisputed evidence that the citation served on Gonzalez did not provide for proper notice under Rule 739, nor did it inform Gonzalez of his right to

request a jury trial. In Conclusion on Charge 3, the Commission concluded that "[i]n the matter of the 'wrongful accusations' lawsuits, Respondent caused citations to be issued in a number of matters wherein the citations were defective in several elementary ways, in violation of [Texas Rules of Civil Procedure] 534." There is undisputed evidence that each of these citations failed to give proper notice under Rule 534 and failed to list the address of the plaintiff or his attorney as required under Rule 534. In Conclusion on Charge 4, the Commission concluded that "[i]n the matter of Jesus Garza, Respondent caused a citation to be issued in a matter wherein the citation was defective in several elementary ways, in violation of [Texas Rules of Civil Procedure] 534." There is undisputed evidence that the citation served on Garza gave inadequate notice of the his required appearance and did not list the address of the plaintiff or her attorney as required by Rule 534.

Respondent does not dispute the fact that she issued defective citations in these matters; rather, she attempts to shift the blame to others, including her predecessor (who left her with no forms for her usage), her staff (including the clerk of the court, who is responsible for issuing citations), the sheriff's department (which is responsible for timely service of citations), and the software company (which produced the alleged faulty software used to produce citations). But this argument does not overcome her own admission that she is responsible for the training and monitoring of her staff, as well as the testimony of Maria Corrales Chacon, her court clerk, that the members of Respondent's staff, and not the software, were responsible for calculating and inserting dates in the citations. Respondent's complaint that the sheriff's department was dilatory in serving defendants does not excuse her from the duty to issue proper citations: no amount of diligence by the sheriff's department can cure defective citations.

*Adjudication of Dispute over Title to Real Property*

■ In Conclusion to Charge 5, the Commission concluded that "[i]n the matter of Jesus Garza, Respondent adjudicated a dispute over title to real property, which is a dispute not lying within the jurisdiction of a justice court." Hernandez sued Garza for breach of contract. As part of her judgment in favor of Hernandez, Respondent awarded possession of the real property to Hernandez. Garza had claimed ownership of the property. There was no evidence to substantiate a landlord-tenant relationship between Hernandez and Garza, and there was evidence which showed taxes paid on the property and title in the name of Maria Garza. The dispute concerned ownership of real property, not the relationship between a landlord and a tenant.

Respondent exercised jurisdiction in a matter in which she had none. Respondent argues that she dealt in good faith with what she perceived to be a confusing case, and that the issue she believed to be before her was possession of the property, not title to the real property. Therefore, she contends, the issue appeared to be one involving a landlord/tenant relationship, thereby implicating her jurisdiction. We find her position unpersuasive. It should have been clear to Respondent that Hernandez's claim lay outside the realm of landlord/tenancy. The underlying complaint was for damages for breach of contract, and the parties contentiously disputed title to the real property. There was evidence of ownership by Garza, and there was no evidence of a lease between Garza and Hernandez.

*Improper Contempt Charge*

■ In its Conclusion to Charge 6, the Commission concluded that "[r]espondent's

telephonic finding that Francisco Gonzalez was in contempt of court at the time of execution of the writ of possession, and Francisco's subsequent incarceration, were contrary to the laws relating to contempt." The record shows that the sheriff's dispatcher testified that Respondent advised him to instruct the deputy executing the writ of attachment to arrest Gonzalez for contempt. Although Gonzalez was ultimately processed for interference with a peace officer's duties, there is an unexplained alteration of his booking card. It is undisputed that none of Gonzalez's actions took place in Respondent's presence or in her court. Respondent claims that she never used the word *contempt* in instructing the appropriate charges to be filed against Gonzalez and was never linked to the white-out appearing on Gonzalez's booking card. While there is conflicting evidence, this record supports a finding that Respondent ordered Gonzalez arrested for contempt notwithstanding the lack of any legal basis for such order.

The evidence detailed above is factually sufficient to support the Commission's conclusion that Respondent exhibited incompetence in the performance of her official duties.

### Respondent's Improper Relationships

#### Oscar Reyna

■ In Conclusion to Charge 8, the Commission concluded, "Regarding the contacts with Nelida Martinez of the Maverick County Supervision and Corrections Department, Respondent wrongfully attempted to use her status as a justice of the peace to favorably influence the handling of Oscar Reyna's status as a felony probationer." Respondent's telephone call to Reyna's probation officer is undisputed, as is her appearance with Reyna and his son at the probation officer's office.

Respondent asserts that the evidence is factually insufficient to establish that she had a personal relationship with Reyna that could have improperly influenced her performance of official duties. We disagree. Respondent admitted (1) speaking to Reyna at a party, (2) having spoken to Reyna by telephone and during a visit to Reyna's office, and (3) having been contacted by Reyna's son to intervene in Reyna's probationary matter. She also points to evidence that Reyna's probation officer denied that she was influenced regarding the handling of Reyna's felony probationary status. The probation officer's denial that Respondent influenced her handling of Reyna's status is irrelevant in this case. The Commission's conclusion is that Respondent *attempted* to influence Martinez's handling of Reyna's probationary status. The fact that Martinez resisted Respondent's influence has nothing to do with Respondent's conduct.

#### Eddie Sandoval

In its Conclusion to Charge 11, the Commission concluded that "Respondent allowed her relationship with Eddie Sandoval to influence her judicial judgment in reducing the bail amount that she had previously set for Ramirez." The record is clear that Respondent initially set a high bond for Ramirez, spoke with County Commissioner Sandoval about the bond, then reduced the bond tenfold and released Ramirez on her own recognizance. She personally visited Ramirez at the jail and specifically referenced Ramirez's relationship with Sandoval. Respondent counters with Sandoval's testimony that he did not attempt to influence Respondent about Ramirez's bail. She argues that she testified that her conversation with Sandoval did not influence her performance of her professional duties.

The Special Master clearly disbelieved Sandoval's testimony that he did not in-

tend to influence Respondent's decision as to Ramirez's bail amount and Respondent's argument that she herself did not indicate that the conversation had such influence. Sandoval's intent is irrelevant in this case, and the fact that Respondent did not admit to any such influence is of little import.

Most of Respondent's challenges focus on witness credibility, circumstantial evidence, and common sense inferences. The evidence detailed above is factually sufficient to support the Commission's conclusion that Respondent willfully and persistently allowed her improper relationship with Reyna and Sandoval to influence her judgment in the performance of her duties.

*Complaints on Sanctions*

 Having determined that the evidence is factually sufficient to support the Commission's conclusions that Respondent's conduct constituted incompetence in the performance of her official duties and willfully or persistently allowed her improper relationship with Oscar Reyna to influence her judgment in the performance of her duties, we address the propriety of the sanctions imposed. The Commission recommended that Respondent be removed from office and prohibited from holding State judicial office in the future. Respondent argues that the actions with which she is charged do not rise to the level of requiring removal from office and a prohibition against holding office in the future, citing *In re Davis*, 82 S.W.3d 140 (Tex.Spec.Ct.Rev.2002); *Barr*, 13 S.W.3d 525; *In re Lowery*, 999 S.W.2d 639 (Tex. Rev.Trib.1998); and *Thoma*, 873 S.W.2d 477. We disagree.

In the present case, we are faced with not just a single incident, but with many instances of judicial misconduct. The evidence supports the findings that Respondent was in fact incompetent in the performance of her judicial duties, had

knowledge of her own incompetence, and remained incompetent despite her willful and persistent violations of the law. Moreover, by allowing a personal relationship to influence her judicial judgment, she has violated the trust of the people who placed her in office. *See Markowitz v. Markowitz*, 118 S.W.3d 82, 86 (Tex. App.-Houston [14th Dist.] 2003, pet denied). Her conduct has resulted, among other things, in wrongful arrest and incarceration, denial of the right to trial by jury, and deprivation of a family's own home. If integrity is the very essence of the judicial vocation, Respondent's conduct leads this Tribunal to conclude that she ought to seek a new and different vocation. *See In re Canales*, 113 S.W.3d 56, 73 (Tex.Rev.Trib.2003).

Respondent's conduct is particularly egregious in that her constituency, litigants in justice court, are the citizens most in need of a fair and competent judge. Given the limited jurisdiction of the justice court, litigants are unlikely to be able to afford legal counsel. They must depend on the judge to inform them of their rights and to protect those rights. Justice court is the gateway to American justice for many people. It is not too much to demand that a justice of the peace competently and fairly carry out the duties of the office to which the voters have elected her. The rule of law demands no less.

Because Respondent has repeatedly failed in her most basic obligation of protecting the most fundamental rights of those she was elected to serve, we find that the recommendations that Respondent be removed from office and prohibited from holding future office are appropriate and not excessive.

### Conclusion

We affirm the recommendation of the State Commission on Judicial Conduct that

Respondent Martha Chacon be sanctioned. We accept the recommendation that Respondent be removed as Judge No. 89, Justice of the Peace, Precinct No. 2, Eagle Pass, Maverick County, Texas. We further accept the recommendation that she be prohibited from holding State judicial office in the future.

We deny the Commission's motion that we refuse to entertain Respondent's motion for reconsideration, should she choose to file one.

RICHTER, J., concurring in an opinion joined by SPEEDLIN, J.

### ORDER

In accordance with this Tribunal's opinion of this date, we affirm and accept the recommendation of the State Commission on Judicial Conduct that Respondent, Martha Chacon, be removed as Justice of the Peace, Precinct 2, Eagle Pass, Maverick County, Texas, and further affirm and accept the recommendation that Respondent be forever barred from holding judicial office in the State of Texas.

**Martha Chacon is hereby removed as Justice of the Peace, Precinct 2, Eagle Pass, Maverick County, Texas, and is forever barred from holding judicial office in the State of Texas.**

MARTIN RICHTER, Justice, concurring.

I join the majority opinion of the review tribunal accepting the State Commission on Judicial Conduct's [1] recommendation to remove Respondent from office and bar her from holding judicial office in the future. I write separately, however, because I believe the majority opinion applies an incorrect standard of review to be utilized by a review tribunal appointed by the Supreme Court of Texas. I have grave concerns about the legal and factual sufficiency standard of review enunciated for the very first time in *In re Thoma*, 873 S.W.2d 477 (Tex.Rev.Trib.1994). The *Thoma* tribunal, unsupported by any legal precedent, deviated and changed the standard of review from one of *de novo* review to one of legal and factual sufficiency, which standard has been followed by every subsequent review tribunal, including the majority in this case. *See In re Bartie*, No. 90, 138 S.W.3d 81, 2004 WL 835981 (Tex. Rev. Trib. April 16, 2004); *In re Canales*, 113 S.W.3d 56 (Tex.Rev.Trib.2003, pet.denied); *In re Barr*, 13 S.W.3d 525, 559–60 (Tex. Rev.Trib.1998); *In re Lowery*, 999 S.W.2d 639 (Tex.Rev.Trib.1998). Until *Thoma*, the standard of review was *de novo*. *See In re Brown*, 512 S.W.2d 317 (Tex.1974); *In re Davila*, 631 S.W.2d 723 (Tex.1982). For the reasons that follow, and after reviewing the history of the Commission and formal removal proceedings, I conclude the proper standard of review that should be applied in all review tribunal proceedings, including this case, is *de novo*.

Following California's lead, Texas became the second state to create an independent commission to enforce ethical standards for judges. 1995 ST. COMM'N JUD. CONDUCT ANN. REP. 15. This new commission was created in 1965 by amendment to article five of the Texas Constitution, patterned the California commission's organization, and was named the Judicial Qualifications Commission.[2] *Id.* at 16–17;

---

1. Hereafter referred to as the "commission."

2. For purposes of this opinion, there is no functional difference between the former Judicial Qualifications Commission and the present State Commission on Judicial Conduct. Hence, both will be referred to interchangeably as the "commission."

*see also* Tex. Const. art. V, § 1 a(2) (amended 1977, 1984). Like its California counterpart,[3] section 1–a of article 5 authorized the commission to investigate complaints, hold formal proceedings and have a special master appointed, and recommend the removal or retirement of a judge.[4] Tex. Const. art. V, § 1–a(6), (8) (amended 1977, 1984). At the time, section 1 a provided that the recommendation for removal or retirement of a judge be made to the supreme court.[5] *Id.* § 1–a(8). Specifically, section 1 a mandated the commission, upon determining to recommend the removal or retirement of a judge, to file promptly its entire record with the supreme court. *Id.* Section 1–a also provided the following standard of review to be employed by the supreme court:

> The *Supreme Court* shall review the record of the proceedings on the law and facts and in its discretion may, for good cause shown, permit the introduction of additional evidence and shall order public censure, retirement or removal, as it

finds just and proper, or wholly reject the recommendation.

*Id.* § 1–a(9)(emphasis added).

The first formal removal proceeding under article 5, section 1–a was *In re Brown,* 512 S.W.2d 317 (Tex.1974). In *Brown,* the supreme court set out the procedural aspects of the complaint process. *Id.* at 318–320. The court noted the commission had the authority to recommend the removal or retirement of a judge and that the proceedings before the commission were not criminal in nature, since the commission's function was not to punish but to maintain the high quality of the judiciary.[6] *Id.* at 319. The court also noted that the burden of proof before the commission was preponderance of the evidence. *Id.* at 319–20. The court then determined that, although the commission had "fact-finding power," the language in section 1 a limiting the commission's authority concerning removal to a *recommendation* "manifest[ed] an intent to leave the court unfettered in its adjudication" and conferred on the court the authority to make "the ultimate decision." *Id.* at 320. Stating that its

---

**3.** See *Geiler v. Comm'n on Judicial Qualifications,* 10 Cal.3d 270, 110 Cal.Rptr. 201, 515 P.2d 1 (1973) (citing to various constitutional provisions concerning the authority delegated to California's judicial commission, the burden of proof in proceedings before the judicial commission, and the standard of review in removal proceedings).

**4.** Prior to this time, there was no formal complaint system, although the Constitution provided for other methods of removal. *See In re Bates,* 555 S.W.2d 420 (Tex.1977); *see also* Tex. Const. art. XV, §§ (1)-(5) (impeachment), (6) (original action of supreme court after hearing on causes presented by sworn testimony of not less than ten lawyers practicing in accused judge's court), (8) (by governor, on address of two-thirds of each house of legislature). Far from where the complaint system is today, the amendment to section 1 a of article 5 granted the Commission jurisdiction only over appellate and district judges and

limited the "corrective measures" the Commission could take to recommending the removal or retirement of a judge. *See* 1995 St. Comm'n Jud. Conduct Ann. Rep. 16.

**5.** This was consistent with California's constitutional provision concerning removal proceedings. *See Geiler,* 110 Cal.Rptr. at 202 n. 1, 203, 515 P.2d 1.

**6.** At the time of *Brown,* the commission's jurisdiction had increased to include county and county court-at-law judges, justices of the peace, and municipal court judges, as well as judges of special courts. 1995 St. Comm'n Jud. Conduct Rep. 17; *see also* Tex. Const. art. V, § 1–a(6) (amended 1977, 1984). The sanctions available to the commission had also increased to include a private reprimand or public censure. 1995 St. Comm'n Jud. Conduct Rep. 17; *see also* Tex. Const. art. V, § 1–a(8) (amended 1977, 1984).

"constitutional responsibility" for making the ultimate decision would not be "abandoned by the delegation of the fact finding power to an administrative agency or the master," the court then concluded it "must make its own *independent evaluation* of the evidence adduced [before the commission]."[7] *Id.* (emphasis added). Although there was one concurring opinion and two dissenting opinions in *Brown,* none of them challenged the majority's determination of the court's standard of review. *See id.* at 325 (Daniel, J., concurring), 325–27 (Reavley, J., dissenting), 327–33 (Johnson, J., dissenting). In fact, all applied a *de novo* review, agreeing the court was the trier of fact. *Id.* at 325 (Daniel, J., concurring), 325–27 (Reavley, J., dissenting), 327–33 (Johnson, J., dissenting).

Following *Brown,* there were three other reported removal proceedings before the supreme court: *In re Carrillo,* 542 S.W.2d 105 (Tex.1976), *In re Bates,* 555 S.W.2d 420 (Tex.1977), and *In re Davila,* 631 S.W.2d 723 (Tex.1982).[8] None of these cases discussed or altered the standard of review enunciated in *Brown.* In fact, in *Carrillo,* the court reviewed the commission's findings and noted several "differences in [the court's] own findings." *Carrillo,* 542 S.W.2d at 109. And, in *Davila,*

the court reiterated that its duty was "to determine whether the evidence taken by the master and by the commission support[ed] the charges and constitute[d] grounds for removal." *Davila,* 631 S.W.2d at 725.

In 1984, the constitution was again amended. It was at this time that the supreme court transferred its authority over removal proceedings to a new reviewing body—the review tribunal. *See* TEX. CONST. art. V, § 1–a(8),(9). The amendment provided in relevant part as follows:

> The *review tribunal* shall review the record of the proceedings on the law and facts and in its discretion may, for good cause shown, permit the introduction of additional evidence. Within 90 days after the date on which the record is filed with the review tribunal, it shall order public censure, retirement or removal, as it finds just and proper, or wholly reject the recommendation.

*Id.* art. V, § 1–a(9)(emphasis added).

Although the amendment completely rewrote two subsections of section 1–a, *see id.* art. V, § 1–a(6),(9), the commission's authority concerning the removal or retirement of a judge remained limited to *recommendations. See id.* art. V, § 1–a(8)(emphasis added). Additionally, the

---

7. In reaching this conclusion, the court cited *Geiler,* 110 Cal.Rptr. at 201, 515 P.2d 1, which interpreted California's constitutional provision concerning formal proceedings. As stated in note 3, *supra,* at the time *Geiler* was issued, the California Constitution authorized the supreme court to review recommendations that a judge be retired or removed for wilful misconduct in office. *Geiler,* 110 Cal. Rptr. at 202 n. 1, 515 P.2d 1 (quoting California Constitution article VI, section 18(c) then in effect). Noting its commission was vested with the power to recommend to the court censure, removal or retirement, but that the ultimate dispositive decision was entrusted to the court, the court concluded that "in exercising that authority and in meeting [the court's] responsibility [the court] must make

[its] own, independent evaluation of the record evidence adduced below." *Id.* at 204, 515 P.2d 1. In other words, "it is to be the court's findings of fact and conclusions of law, upon which [the court is] to make [its] determination of the ultimate action to be taken." *Id.*

8. During this time, there were also a few constitutional amendments to section 1–a. *See* 1995 ST. COMM'N JUD. CONDUCT REP. 17. However, none affected the supreme court's standard of review in removal proceedings. *Id.* The amendments included changes in the commission's membership and in the sanctions available to the commission. *See* TEX. CONST. art. V, § 1–a(2),(6) (amended 1984).

1965 standard of review the supreme court was mandated to employ in removal proceedings and which was interpreted as a *de novo* review in *Brown* did not change. The amendments changing the reviewing body from the supreme court to the review tribunal did not alter the requirement that the record be reviewed "*on the law and facts.*" I find nothing in the amendments to section 1 a that should alter that standard of review for the tribunal.

*Thoma* was the first reported opinion of a review tribunal. That case abruptly departed from the *de novo* standard of review enunciated in *Brown*. *Thoma,* 873 S.W.2d at 485. Although *Thoma* cited the *Brown* opinion for other propositions of law, *Thoma* did not address the standard of review in light of *Brown* and its progeny. *Id.* As discussed below, I believe the *Thoma* court erroneously viewed the review tribunal proceeding as an appellate proceeding. *Id.* (see discussion heading entitled "Standard of Review on Appeal" in *Thoma* opinion).

In arriving at a traditional legal and factual sufficiency standard of review as applied in civil cases, the tribunal in *Thoma* noted that the special master and the commission are required to conduct formal removal proceedings as nearly as practicable in accordance with established rules of civil procedure. *Id.* The tribunal also noted the special master and the commission can receive only "legal evidence" at these proceedings, and that the commission can adopt the master's findings as its own. *Id.*

The *Thoma* tribunal then concluded, without reference to any legal authority, that the master's findings were "tantamount to findings of fact filed by a trial judge in a trial without a jury" and it would review them under the same standards an appellate court would review a trial judge's findings of fact in a civil case. *Id.* This unsupported assertion appears to be the linchpin upon which *Thoma* concluded that commission findings are reviewed for factual and legal sufficiency. Thereafter, the *Thoma* tribunal relied exclusively on general civil cases, rather than judicial removal cases, when it held that the legal and factual sufficiency standard of review was applicable. *Id.*

Furthermore, I note that review of informal proceedings of the commission by the three-judge special court of review is set by statute as *de novo.* TEX. GOV'T CODE ANN. § 33.034(d) (Vernon 2004); *see also* TEX.R. REM'L/RET. JDG. 9 (West 2004). A special court of review can impose various sanctions short of removal; only the review tribunal can order a judge removed from the bench and bar him or her from ever holding judicial office again. TEX. CONST. art. V, § 1–a(6)–(11); TEX.R. REM'L/RET. JDG. 9–12 (West 2004). It would seem illogical to allow *de novo* review of charges that cannot result in the removal of a judge, while mandating the stricter review posture of legal and factual sufficiency when a judge's forced removal from office is at stake.

By equating the commission's findings to those of a trial judge, the tribunal in *Thoma* improperly elevated the commission to a court of law and lowered the tribunal's responsibility in reviewing removal proceedings to a balancing act—one where the judge's favorable conduct is weighed against the specific acts of judicial misconduct. *See Brown,* 512 S.W.2d at 333 (Johnson, J., dissenting) ("the function of [the supreme court in removal proceedings] is not to make [the removal] determination by weighing in the balance a judge's favorable and commendable conduct against the specific acts of misconduct with which he is charged; it is not to weigh a judge's good and bad characteristics ... If the act or acts at issue seriously violate the public interest in an unbiased and dedicat-

ed judiciary, then the judge must be removed regardless of the attributes of his other conduct.").

The commission is not a court of law and, by constitutional mandate, the tribunal *is* the trier of fact.[9] The error in *Thoma* lies in its characterization of the commission's hearing as a civil trial and the proceedings before the tribunal as an appeal. Were the commission's removal recommendations self-effectuating, the standard of review enunciated in *Thoma* might apply.[10] However, they are not. They merely trigger the proceedings before the review tribunal leading to the eventual determination of whether a judge should be retired or removed. The proceeding before the tribunal is a continuation of the removal process begun before the commission and must occur regardless of the parties' desire, unlike a civil appeal.

Following *Thoma*, all reported review tribunal decisions adopt without analysis the legal and factual sufficiency standard of review articulated therein. Like a train pulling cars having no independent power of their own, *Thoma* has taken a spur not found on the constitutional map of this state. For the foregoing reasons, I conclude that the review tribunal cannot and must not make a decision to remove or retire a judge without complying with its constitutionally mandated duty of conducting an *independent* evaluation of the record.

For these reasons, I would apply a *de novo* standard of review in removal proceedings.

---

**9.** Further credence for this lies in the tribunal's authority, in its discretion and for good cause shown, to permit the introduction of additional evidence. *See* TEX. CONST. art. V, § 1–a(9). This is not to say, however, that the tribunal will conduct an entirely new proceeding. Good cause must be shown for why this evidence was not presented to the Commission and, even if good cause is shown, the tribunal retains discretion in allowing the evidence. *Id.*

**10.** In *Geiler,* the California Supreme court suggested that the proper standard of review in such a situation might be substantial evidence. *Geiler,* 110 Cal.Rptr. at 204, 515 P.2d 1. This is the standard our supreme court employs in reviewing tribunal proceedings. *See* TEX.R. REM'L/RET. JUDG. 13.